[Civ. No. 27844.   Second Dist., Div. Three.   Aug. 16, 1965.]

INTRASTATE CREDIT SERVICE, INC., Plaintiff and Appellant, v. PERVO PAINT COMPANY, INC., Defendant and Respondent.

Sisenwein & Stanton and Max Sisenwein for Plaintiff and Appellant.

L. E. Silverton and Justin Graf for Defendant and Respondent.

ASHBURN, J.*—Intrastate Credit Service, Inc. sued defendant Pervo Paint Company, Inc. upon Pervo's promissory note for $5,000 made payable to Intrastate and Q R S Neon Corporation, Ltd.;[1] the last named corporation had assigned to Intrastate its interest in the note. The court sustained Pervo's plea of breach of an implied warranty on the part of Q R S and offset the damage against the amount of the note, resulting in a judgment for plaintiff Intrastate against Pervo

---

*Retired Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1] The parties are hereinafter called Intrastate, Pervo and Q R S respectively.

for $3,841.50 plus attorneys' fees and costs. Plaintiff appeals.

In 1958 and 1959 Pervo and Q R S had entered into a series of 10 lease agreements whereby Pervo leased from Q R S for three year terms 10 illuminated signs which were constructed and installed by the lessor upon premises of paint dealers designated by Pervo, the lessee. One of these leases covered a sign located in the City of Alhambra and later moved to Culver City; that lease was made on December 12, 1957. Another such lease dated June 18, 1959, covered a sign located in the City of Bakersfield.[2]

Difficulties and litigation involving all of said parties resulted in a judgment in favor of Intrastate against Pervo for $8,966.94 plus costs and a declaration that Pervo take nothing by its cross-complaint against Q R S.

Thereafter, on February 5, 1962, a written compromise agreement (Ex. 1 to plaintiff's complaint) was made between said parties. It recites the above mentioned judgment, also the fact that "PERVO is in possession of ten (10) illuminated signs" covered by separate leases, the desire of the parties "to settle their differences and terminate the rental agreements covering" all of said 10 signs, and that "PERVO desires to obtain title to all of the signs in place, at each location whereat said signs are now installed."[3] It is agreed Pervo shall pay to Intrastate and Q R S the sum of $26,000, in consideration of satisfaction of the judgment and transfer to Pervo of title to each of the 10 signs "and a waiver of any further rental under the executory provisions of the unexpired leases. . . ." The sum of $6,000 was to be paid forthwith and the remaining $20,000 in installments of $5,000 each evidenced by four notes; title to all signs to be retained by Q R S until full payment, whereupon bills of sale were to be delivered to Pervo. Paragraphs 7 and 8 read: "It is understood that said signs have been installed in locations selected by PERVO and said PERVO accepted delivery of said signs as installed at their present locations.

"Q R S warrants that it has retained and has title to said signs hereinbefore referred to and Q R S warrants the title to

---

[2] Copies of these two leases are attached to Pervo's cross-complaint as Exhibits C and D.

[3] These lease agreements show that these signs are removable trade fixtures.

said signs." Nothing is said about warranty of quality or fitness for a particular purpose.

In the instant action Pervo relies upon an implied warranty that said signs were of sufficient quality for Pervo's known "purpose of outdoor advertising displays." The trial court upheld this contention with respect to the Bakersfield sign and offset the cost of repairs, $1,400, against the amount otherwise due on the one unpaid note, the one in suit. With respect to the other wind-damaged sign at Culver City the court disallowed the claim apparently because of tardiness in giving notice of breach of warranty as required by section 1769, Civil Code. (See 43 Cal.Jur.2d § 265, p. 382.)

Concerning the Bakersfield sign the findings say "This sign was slightly damaged in January or February of 1962, whether before or after the execution of the settlement agreement is not clear. In any event, it was seriously damaged by a windstorm after the signing of the new agreement and on or about March 1, 1962. . . . It is important to note that the execution of the agreement of February 5, 1962, preceded the damage to the sign in March 1962. The contract of February 5, 1962, was a sale of personal property which was already in the possession of Defendant and they agreed to take the signs in the condition in which they were. However, there was an implied warranty that the signs at that time were reasonably fit for their intended use. It is clear that Q R S knew that the signs were to be subjected to the elements since they were installed outside of the buildings at their respective locations. Both signs were damaged by windstorms. Each was damaged at different times and at different places, indicating a lack of fitness in the signs or a defect in the manufacture or installation thereof."

■ Defendant, the party relying upon implied warranty, had the burden of proving that there was one and of establishing each of its constituent elements. (*Tidlund* v. *Seven Up Bottling Co.*, 154 Cal.App.2d 662, 666 [316 P.2d 656]; *Vaccarezza* v. *Sanguinetti*, 71 Cal.App.2d 687, 690-691 [163 P.2d 470]; 77 C.J.S. § 365, p. 1283.)

■ An implied warranty is not one growing out of agreement implied in fact nor does it rest upon intention of the parties, 77 Corpus Juris Secundum, section 314, page 1155: "Implied warranties are created by operation of the law and they do not arise from any agreement in fact of the parties, but they will not be created contrary to the manifest intention of the parties."

Section 1735 Civil Code,[4] which imposes implied warranties in this state, provides: "Subject to the provisions of this act and of any statute in that behalf, there is no implied warranty or condition as to the quality of fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows: . . . (3) If the buyer has examined the goods, there is no implied warranty as regards defects which such examination ought to have revealed." This section is identical with provisions of section 15, Uniform Sales Act.

■ ■ It is well settled law that (subject to certain inapplicable exceptions) inspection, or opportunity to inspect which is not pursued, precludes the arising of an implied warranty except as to those defects which would not be revealed upon a reasonably prudent examination (*Byrne* v. *Jansen,* 50 Cal. 624, 627; *Lacy* v. *Greer-Robbins Co.,* 4 Cal.2d 770, 773 [53 P.2d 161]; *Webster* v. *Klassen,* 109 Cal.App.2d 583, 592 [241 P.2d 302]; 43 Cal.Jur.2d § 116, p. 252; § 118, p. 254; 46 Am.Jur. § 338, p. 521; 77 C.J.S. § 315, p. 1158) and failure to inspect an immediately accessible subject of sale is not excused by the fact that inspection would involve trouble and expense. 46 American Jurisprudence, section 338, page 522: "Inconvenience or difficulty on the part of the buyer to make an inspection of the article sold, as, for instance, where it is contained in casks or bales, does not alter the general rule and raise by implication any warranty of quality." (To same effect see *Lacy* v. *Greer-Robbins Co., supra,* 4 Cal.2d 770, 773.)

Defendant at pretrial hearing contended that the damage to the Bakersfield sign was due to improper construction which made it unable to withstand even normal weather conditions and such "construction defects were latent defects." The court did not so find and the evidence does not so show.

■ This was one of a group of signs which had been erected by Q R S at locations designated by Pervo, upon premises occupied by its paint dealers and the leases indicate they were roof signs. The findings say: "It is clear that Q R S knew that the signs were to be subjected to the elements since they were installed outside of the buildings at their respective locations. Both signs were damaged by wind-

[4]This case is governed by the Civil Code rather than the Commercial Code which became effective on January 1, 1965.

storms.'' Also that the Bakersfield sign was "slightly damaged" by wind in January or February of 1962; apparently that damage was not repaired. The Bakersfield sign was "seriously damaged by a windstorm" on or about March 1, 1962. Mr. Tarlton, merchandising manager of Pervo, testified that he saw this damage, saying: "At this point the sign blew completely out of the frame." They replaced the plexi-glass paneling on decking . . . on both sides of the sign, and retubed the sockets in the sign and replaced the globes and letters on the outside of the sign." The cost was $1,456. That is the extent of the evidence on the subject. It lays no basis for any claim that the "defect," if any there was, would have eluded a reasonable examination of same at the time of the purchase agreement of February 5, 1962.

The findings above quoted say "The contract of February 5, 1962, was a sale of personal property which was already in the possession of Defendant and they agreed to take th[e] signs in the condition in which they were." This finding is not challenged.[5] The record shows it is correct for defendant took possession under its lease in June 1959 and continued in possession through its dealers at all subsequent times. The contract of sale itself recited that "PERVO is in possession of ten (10) illuminated signs. . . ." The finding of defendant's possession establishes opportunity to make an inspection and the silence of the record with respect to any inspection establishes there was none, for the burden was on defendant to prove an inspection and failure to offer evidence on the subject required a finding that there was no inspection and hence no implied warranty.

The latter portion of the quoted finding that defendant "agreed to take the signs in the condition in which they were" which is likewise unchallenged, brings into operation the "as is" doctrine, which is stated in *Roberts Distributing Co.* v. *Kaye-Halbert Corp.*, 126 Cal.App.2d 664, 669 [272 P.2d 886]: "A provision that the buyer takes the article in the condition in which it is, or 'as is,' prevents representations of the seller, although relied on by the buyer, from constituting express or implied warranties." To same effect see *Lingsch* v. *Savage*, 213 Cal.App.2d 729, 742 [29 Cal.Rptr. 201]; 43 California Jurisprudence, Second Edition, section 103, page 239; Annotation: 58 American Law Reports 1181.

---

[5] As to an attack upon a finding by respondent, see *Phillips* v. *Phillips*, 41 Cal.2d 869, 875 [264 P.2d 926; 4 Cal.Jur.2d § 552, p. 413.

■ The principles above stated are peculiarly applicable to sales of secondhand goods. 46 American Jurisprudence, section 360, page 545: "It is generally held upon the sale of a designated, specific article sold as secondhand that there is no implied warranty as to its quality or fitness for the purpose intended, at least where it is subject to inspection at the time of the sale." See also *Drumar Min. Co.* v. *Morris Ravine Min. Co.*, 33 Cal.App.2d 492, 497-498 [92 P.2d 424], and Annotation in 151 American Law Reports 446, at page 460. ■ This property having been in the possession of the buyer for almost three years and having suffered wind damage after such a period of use, we perceive no reason for declining to apply the used property rule to the instant case or for conjuring up some hidden defect in the sign.

We conclude that the evidence and the law fail to sustain the lower court's finding that "there was an implied warranty that the signs at that time [February 5, 1962] were reasonably fit for their intended use."

■ We also find that there was no substantial evidence that the particular sign was not reasonably fit for the intended use. The fact that the other sign was damaged at Culver City, many miles away and on a different occasion, does not add anything to the claim that the Bakersfield sign was defective. (Cf. *J. I. Case Plow Works* v. *Niles & Scott Co.*, 90 Wis. 590 [63 N.W. 1013, 1017].) The court's finding was that it was "seriously damaged by a windstorm." The cross-complaint says that the sign was damaged "by winds" and said "damage was occasioned by lack of appropriate reinforcing bars in the construction." Pervo claimed at pretrial conference that the "signs were improperly constructed and could not withstand even normal weather conditions" and "Such construction defects were latent defects. . . ." The evidence fell short of these allegations.

Mr. Tarlton, merchandising manager of Pervo, testified that the Bakersfield sign (on March 1, 1962) "blew completely out of the frame" and described the repairs as follows: "They replaced the plexi-glass paneling on decking . . . on both sides of the sign, and retubed the sockets in the sign and replaced the globes and letters on the outside of the sign."

Mr. Barker, owner-manager of the neon sign company that repaired the Culver City sign after damage of October 30, 1961, said: "There was a heavy wind storm on a Saturday.

Fortunately when the Center Paint Company called in, knowing that we had installed the sign, we had two men available who were dispatched to the Center Paint Company. Pieces of the sign were blowing out into the street, quite large pieces and endangering cars and people. We sent two men down and they secured the sign as best they could under the high wind storm and picked up the pieces.'' But there is no testimony as to the nature of the wind at Bakersfield on March 1, 1962, the date of that damage. Whether it was so severe as to be an act of God, on the one hand, or a mild blow that would not have damaged the sign except for the continued existence of the damage received on a former occasion and not repaired does not appear. This earlier damage was described by the witness as follows: ''This is a double face flat sign. As I recall, there were three or four letters blown off of the plexi-glass surface and the plexi-glass itself was cracked down one side.'' The defect in the sign, if there was a defect on March 1, 1962, may or may not have been a proximate cause of the damage it received on that date. Cross-complainant has failed to make proof by a preponderance or at all upon the affirmative of that issue.

The judgment is reversed.

Shinn, P. J., and Ford, J., concurred.