VIRGIL LONG, APPELLANT, V. ROY M. CARPENTER, APPELLEE.

50 N. W. 2d 67

Filed November 23, 1951. No. 33010.

*Frost, Peasinger & Meyers,* and *Bernard A. Ptak,* for appellant.

*Towle, Young & Mattson, Webb & Kelley,* and *H. B. White,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff brought this action to recover damages from defendant for breach of express warranty that a show mare, by name Hattie Carnegie, purchased from defendant for show purposes on October 21, 1947, was sound, when, at the time of purchase, she was allegedly unsound and unfit for use as a show horse because of a latent, progressive, incurable defect or disease, known as side bones in both front feet, which was not reasonably discoverable by physical examination and was not discovered by plaintiff until June 9, 1948.

The defense in substance was a general denial plus an express denial that any warranty of soundness was ever made by defendant or that plaintiff was induced thereby or relied thereon in making the purchase, together with a contention that the animal was sound and without side bones when sold to plaintiff, and if such side bones subsequently developed, they were induced and brought about by improper care, training, conditioning, and handling by plaintiff or his agents, employees, or trainers.

During the trial defendant's motion for directed verdict, made at the conclusion of plaintiff's evidence and renewed at conclusion of all the evidence, was overruled, and the issues were submitted to a jury. Plaintiff was awarded a verdict and judgment thereon for $2,000 with interest at 6 percent from July 26, 1948. Thereafter defendant timely filed a motion for judgment notwithstanding the verdict, or, in the alternative, for a new trial. Upon submission thereof, the trial court rendered and entered its order, whereby the motion for new trial was overruled, but the motion for judgment notwithstanding the verdict was sustained and plaintiff's cause of action was dismissed at plaintiff's cost. Thereupon, plaintiff appealed, assigning that the trial court erred in sustaining defendant's motion for judgment notwithstanding the verdict and in dismissing plaintiff's cause of action. We sustain the assignment.

On the other hand, defendant alternatively assigned that in any event the trial court erred in overruling his alternative motion for new trial, for the reasons in substance that: (1) The verdict and judgment entered thereon were not sustained by the evidence but contrary thereto; (2) there was no issuable question of fact submissible to a jury and a verdict should have been directed; and (3) plaintiff's damages were not a loss directly and naturally resulting in the ordinary course of events from the claimed breach of warranty.

In that connection, it will be observed and in the brief defendant concedes that such grounds are identical with those urged in support of the order sustaining defendant's motion for judgment notwithstanding the verdict. No assignment or contention whatever was made by defendant that the trial court otherwise erred in any manner or for any other reason than aforesaid, and we find no plain error unassigned requiring discussion.

In Armer v. Omaha & Council Bluffs St. Ry. Co., 153 Neb. 352, 44 N. W. 2d 640, it is said: "On the other hand, if appellee desires to insist upon his right to a new trial, in case the entry of the judgment notwithstanding the verdict is held to be erroneous, he must assign such errors contained in his motion for a new trial upon which he intends to rely to obtain it." Defendant, appellee here, did not comply with that rule, so, by analogy, as in the afore-cited case, he waived all errors unassigned. In the final analysis, it must be said that he relied solely upon the correctness of the trial court's action in sustaining his motion for judgment notwithstanding the verdict. Therefore, since we conclude that it was error to sustain defendant's motion for judgment notwithstanding the verdict, it follows that the trial court properly overruled defendant's alternative motion for new trial.

The primary question for decision then is whether or not plaintiff adduced sufficient competent evidence from which it could have been reasonably concluded

that: (1) Defendant made an express warranty of soundness, the natural tendency of which was to induce plaintiff to purchase the animal; (2) in making the purchase plaintiff relied thereon; (3) a breach thereof because the animal was unsound and unfit for use as a show horse at time of purchase by reason of a latent, progressive, incurable defect or disease called side bones; and (4) plaintiff suffered damages directly and naturally resulting therefrom and the amount of such damages. We conclude that the evidence was sufficient.

At the outset there are applicable statutes and rules of law which should be stated. In that regard, section 69-412, R. R. S. 1943, provides: "Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon. No affirmation of the value of the goods, nor any statement purporting to be a statement of the seller's opinion only, shall be construed as a warranty."

In McGuire v. Thompson, 152 Neb. 28, 40 N. W. 2d 237, this court held: "The positive statement of a dealer in livestock, or an assertion or affirmation of fact, as to the quality or condition made in the course of exchange, indicating that he intended to bind himself to its truth, and which was so understood and relied upon by the other party to the exchange, may constitute a warranty."

As stated in 55 C. J., Sales, § 737, p. 770: "An express warranty of soundness of an animal may arise from representations by the seller made to induce a sale and relied on by the buyer, but not unless relied on by the buyer. Such a warranty need not be affirmed to be effective. * * * A warranty that an animal is sound implies the absence of any defect or disease which impairs or in its progress will impair the animal's natural usefulness for the purpose for which it is purchased, which defect must be existent at the time of

sale, and is breached by any defects which render it permanently less serviceable, as, for example, a disease, or malformation of the animal's body or the animal's disposition, although the defect may not be fully developed at the time of the sale, and although the defect was not known to the seller." See, also, Lentz v. Omar Baking Co., 125 Neb. 861, 252 N. W. 410.

Section 69-469, R. R. S. 1943, provides in part: "(6) The measure of damages for breach of warranty is the loss directly and naturally resulting, in the ordinary course of events, from the breach of warranty." In that connection, section 69-470, R. R. S. 1943, also provides: "Nothing in this act shall affect the right of the buyer * * * to recover * * * special damages in any case where by law * * * special damages may be recoverable, * * *."

Ordinarily, the measure of damages for breach of warranty of quality or condition is the difference between the value of the property at time of sale and the value it would have had if as warranted. Cox v. Greenlease-Lied Motors, 134 Neb. 1, 277 N. W. 819.

However, as held in Burr v. Redhead, Norton, Lathrop Co., 52 Neb. 617, 72 N. W. 1058: "All damages in contemplation of the parties to the contract, or which naturally may result from a breach of a warranty, accrue in favor of the party injured by such breach.

"What are sometimes denominated 'consequential damages' may be recoverable in an action for a breach of warranty, if they are certain and determinate in nature or amount, or can be rendered so by evidence, and are also directly attributable to the breach of the contract as their cause." See, also, Punteney-Mitchell Mfg. Co. v. Northwall Co., 66 Neb. 5, 91 N. W. 863.

As stated in 88 A. L. R. 1440, quoting from 24 R. C. L. 76: " 'The right to recover special damages is subject to two conditions or limitations: (1) That the damages must be such as may fairly be supposed to have entered into the contemplation of the parties when they

made the contract, that is, must be such as might naturally be expected to follow its violation; and (2) they must be certain, both in their nature and in respect to the cause from which they proceed.' " In that connection, the record discloses that plaintiff adduced competent evidence in support of both such conditions or limitations.

That the foregoing rules apply to the breach of warranty of animals under such circumstances as those appearing in the case at bar, is clearly stated in 46 Am. Jur., Sales, § 752, p. 880, which cites supporting authorities too numerous to here enumerate.

Finally, it is elementary that: "A motion for directed verdict or for judgment notwithstanding the verdict must, for the purpose of decision thereon, be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed, who is entitled to have every controverted fact resolved in his favor, and have the benefit of every inference that can reasonably be deduced from the evidence." Trebelhorn v. Bartlett, *ante* p. 113, 47 N. W. 2d 374.

Bearing the foregoing rules in mind, we have examined the record. It discloses without dispute that plaintiff purchased the animal, a three-gaited show mare, from defendant, a dealer in show horses, on October 21, 1947, for $1,750, at a horse show in Kansas City, Missouri, where, on that date, she had won second place in her class as a show horse at the American Royal Horse Show. It is also not disputed that while the sale took place in Missouri, the law of that state was neither noticed, pleaded, nor proved, and it is presumed to be the same as the law of this state.

There is competent evidence adduced by plaintiff that early in the morning of the sale plaintiff was talking with defendant about buying the animal and asked defendant if the "mare was sound." Plaintiff then told defendant that he "wouldn't buy a horse unless it was either guaranteed sound by him or I would call in a vet to

examine her." Thereupon, defendant said, " 'Yes, sir; absolutely,' * *. * there was no use, that he would guarantee her a hundred per cent sound."

Thereafter, at noon, just before the sale was made and concluded, plaintiff again asked defendant if the animal was sound, whereupon defendant said: " 'Yes sir; a hundred per cent.' * * * 'If you find anything wrong with her you know where you got her.' " At that time, plaintiff again told defendant that "unless he guaranteed the mare sound I wanted her looked over by a vet." Plaintiff stated that he "would not buy her" unless that was done. To which defendant again replied that "there was no use doing that, that he guaranteed her a hundred per cent sound." Plaintiff testified also that "his statements (statements) that morning influenced me to buy the horse" because "She was more in the price range that I wanted to pay for a horse."

We conclude that there was ample competent evidence to sustain a conclusion that defendant made the warranty above set forth. Defendant denied that he made any warranty, but in his brief here conceded that such issue was for the jury. In that connection, we also conclude that the natural tendency of the aforesaid statements, if made, was to induce plaintiff to purchase the animal and that there was ample evidence from which it could have been reasonably concluded that plaintiff purchased her relying upon an express warranty of soundness.

There is competent evidence that by pre-arrangement with defendant, plaintiff took possession of the animal at Hamburg, Iowa, about the middle of November, and brought her to Norfolk, Nebraska, where he exercised her for a couple of weeks. From December 13, 1947, to June 9, 1948, she was in training at stables in Sioux City, Iowa, operated by an experienced horse trainer. There she was being trained for the Waterloo, Iowa, show which took place in April 1948. It was noticed by such trainer before taking her to Sioux City that she was not raising her front legs as high as she should, and after-

wards, at Sioux City he noticed that she worked better on soft ground, so a long straw runway was built on which to train her. There, not knowing what was wrong, but believing that her feet were too long, hard, and dry, they were trimmed, shod, and soaked in mud, without noticeable beneficial results. At the Waterloo show, she did not place because she did not perform well. There she refused to bend her knees naturally, and walked stiff-legged or gimpy.

In June she was taken by plaintiff to the veterinary clinic at Iowa State College, Ames, Iowa, where she was physically examined and X-rays were taken by outstanding veterinarians employed by that school, who testified at the trial. The physical examination did not show any evidence of side bones. However, the X-ray pictures taken on June 9, 1948, and again on August 1, 1949, clearly disclosed the presence of side bones, latent, progressive, incurable bony growths on each side of her front feet, which, in the opinion of the examining veterinarians who qualified as experts, had, with reasonable certainty, been in existence for at least a year prior to June 9, 1948, and possibly longer, making her unsound at the time of purchase and worthless as a show horse. It was also shown by plaintiff that in such condition she was worth only $400 or $500 as a brood mare. Special damages, established by evidence adduced in plaintiff's behalf, to which no objection was made at the trial, amounted to $740.75. In that connection we conclude that the amount of the verdict and judgment awarded was amply supported by competent evidence.

A short time after June 9, 1948, plaintiff drove to defendant's home in Hamburg, Iowa, told him what the veterinarians at Iowa State College had told plaintiff about the condition of the mare, and sought a settlement therefor. There defendant did not deny that he had guaranteed the mare to be sound, but simply stated that he would make no adjustment with plaintiff for his damages.

Concededly, the animal did develop a founder or laminitis sometime after the Waterloo show, caused, it was thought, by the jar of her hot and fevered feet working on hard roads. In that regard, however, the veterinarians, as experts, testified that side bones would not produce but could well be a contributing cause of laminitis, while laminitis would not produce or be a contributing cause of side bones.

We find no evidence adduced by plaintiff from which it could be concluded, as a matter of law, that plaintiff or anyone employed by him, had subsequently caused or contributed to the side bones which, as shown by evidence adduced in plaintiff's behalf, made her unsound at the time of purchase and then unfit as a show horse, the purpose for which she was purchased by plaintiff. Defendant contended otherwise, but that was a question for the jury. In that regard, by instruction No. 5-A, the jury was told substantially that if the mare became unsound and unfit for use as a show horse, not for any reason that existed at the time of the sale but subsequently, through the neglect of the plaintiff, his agents, trainers, or employees, as contended by defendant, then plaintiff could not recover, and their verdict should be for defendant. The jury evidently found against defendant upon that issue, as they had a right to do, but concluded that the animal was unsound and unfit for use as a show horse because of latent side bones that existed at the time of purchase. If she was so latently unsound at time of purchase, then the fact that she subsequently acquired other defects or diseases would not bar plaintiff's right of recovery as a matter of law. Cases cited by defendant are distinguishable upon the facts and applicable law.

We conclude that the trial court properly overruled defendant's alternative motion for new trial, but erred in rendering and entering the order or judgment sustaining his motion for judgment notwithstanding the verdict, and dismissing plaintiff's cause of action. Therefore,

such judgment should be and hereby is reversed and the cause is remanded with directions to reinstate plaintiff's case, together with the verdict and judgment thereon. ·

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.