GILLETTE DAIRY, INC., a Corporation, Appellant,

v.

HYDROTEX INDUSTRIES, INC., a Corporation, and Texas Pioneer Corporation, Appellees.

No. 20103.

United States Court of Appeals, Eighth Circuit.

April 13, 1971.

Kenneth Cobb, Lincoln, Neb., and Lynn D. Hutton, Jr., Norfolk, Neb., for appellant.

Fredric H. Kauffman, Lincoln, Neb., for appellees.

Before VAN OOSTERHOUT and HEANEY, Circuit Judges, and HANSON, District Judge.

HANSON, District Judge.

This is an appeal by the plaintiff from an adverse jury verdict and the refusal by the district court to grant a new trial. Plaintiff-Appellant Gillette commenced this action in the United States District Court for the District of Nebraska against defendants-appellees [hereinafter referred to as Hydrotex] seeking damages for breaches of warranty with respect to compressor oil sold by Hydrotex to Gillette. In short, Gillette claims the oil was not as warranted and, as a result, certain compressors were damaged. Hydrotex admitted the sale of the oil in question, Hydrotex No. 206-A, but denied existence of the alleged warranties and further denied that plaintiff's damages resulted from the oil. As an affirmative defense, Hydrotex pleaded contributory negligence.

The matter was tried to a jury who returned a verdict for Hydrotex. Gillette's motion for new trial was overruled and this appeal pursued. Gillette raises three issues for review: (1) that the trial court erred in submitting as a defense plaintiff's contributory negligence without instructing as to burden of proof and the requisite quantum of proof; (2) that the trial court committed reversible error in admitting into evidence a letter from one of defendant's employees to a fellow employee; and (3) that the trial court erred in submitting the existence of implied and express warranties to the jury rather than directing that such warranties existed.

We find each of the assigned errors to be without merit and affirm. The issues presented by appellant will be treated seriatim.

I.

Gillette contends that the trial court erred in the submission of the defense of contributory negligence. Specifically, appellant points to the failure of the court to instruct on Hydrotex's burden of proof on its affirmative defense. Such an argument necessarily presupposes that the district court submitted contributory negligence as an affirmative defense. The court did not do so.

Instruction 4 of the court's instructions sets forth Gillette's claim that defendants' oil was responsible for its damage as well as Hydrotex's claim that any damage was caused, not by the oil, but by sludge which had accumulated in the compressors. Instruction 5 stated that Gillette has the burden of proving its claim by a preponderance of the evidence and delineated the essential elements of the claim. One of these elements was as follows:

    4.  That damage and loss accrued to plaintiff by reason of the failure

to deliver oil which complied with the warranties made.

Instruction 6 then stated:

There has been testimony from which you could conclude that sludge or some foreign matter which had no connection with the oil sold by defendants caused the injury and damage to the compressors. Defendants have no burden of proof in this regard but this evidence can be considered by you in determining whether plaintiff has proven by a preponderance of the evidence that the oil furnished by defendants caused the damage and loss and particularly whether as to essential allegation number 4 above set forth the evidence is equally balanced or preponderates in favor of the defendants.

■ It is obvious from a complete reading of the instruction that even though defendants may have pled contributory negligence as an affirmative defense, the trial court did not submit this defense to the jury. The court merely spelled out in some detail the manner in which the jury was to consider the evidence adduced by defendants in relation to plaintiff's claim. Thus, the trial court not having submitted contributory negligence as a defense, it is not error to fail to instruct on the attendant burden of proof of such a defense.

## II.

Gillette also claims reversible error in the admission into evidence of a letter, Exhibit 66, from one of Hydrotex's employees to a fellow employee. The letter states results and conclusions pertaining to tests run on oil samples taken from the compressors.

■■ Even assuming the letter was inadmissible as hearsay, its admission was harmless error. Exhibit 66 is at most cumulative evidence. The test results reflected in this exhibit were directly testified to by one of defendants' witnesses, Bert Melchar, the chemist who analyzed the oil samples. Furthermore, the test results set forth in Exhibit 66 were utilized as a basis of opinion testimony by one of Gillette's own expert witnesses. Insofar as the conclusionary matter contained in Exhibit 66, this was also cumulative evidence and, consequently, harmless error. Jack Hodges, a lubrication engineer and a witness for Hydrotex, on direct examination gave an identical opinion as to the cause of the compressor failures. His opinion was based in part on the sludge analysis test results contained within Exhibit 66. Therefore, even assuming the inadmissibility of Exhibit 66, improper admission of incompetent evidence which is merely cumulative on matters clearly shown by other admissible evidence is harmless error. Brewers and Maltsers Local Union No. 6 v. N. L. R. B., 301 F.2d 216, 226 (8th Cir. 1962); Walsh v. Bekins Van Lines Co., 217 F.2d 388 (8th Cir. 1954); Rossville Salvage Corp. v. S. E. Graham Co., 319 F.2d 391, 396 (3d Cir. 1963); Hannigan v. Sears, Roebuck & Co., 410 F.2d 285, 292–293 (7th Cir. 1969).

## III.

The last issue presented in this appeal is whether the District Court erred in submitting the existence of express and implied warranties to the jury rather than finding the warranties to exist as a matter of law.

■ The usual rule in respect to what matters are or are not to be submitted to the jury is that where the evidence so overwhelmingly demonstrates what the fact is so as to leave no room for reasonable doubt, it is the duty of the court to decide the question as a matter of law rather than submit it to the jury for determination. Continental Can Co. v. Horton, 250 F.2d 637 (8th Cir. 1957); Jarosh v. Van Meter, 171 Neb. 61, 105 N.W. 2d 531 (1960); Costello v. Simon, 180 Neb. 35, 141 N.W.2d 412 (1966).

Thus, to sustain Gillette's position, we would have to find that the evidence would permit no other reasonable conclusion but that the warranties did in fact exist.

The District Court submitted the issue of warranty to the jury in the following instructions:

## Instruction No. 5

The burden of proof is upon the plaintiff to prove all of the essential allegations of its claim against the defendant by a preponderance of the evidence before plaintiff may recover. The essential allegations of the complaint which must be so proved by a preponderance of the evidence in order to entitle plaintiff to recover upon said claim against the defendants, may be summarized as follows:

1. a. The oil sold and delivered by defendants to plaintiff was sold under an express warrant that it would meet major equipment manufacturer specifications and that it was of top quality, or

   b. that the oil sold and delivered by defendants to plaintiff was sold under an implied warranty that the goods were merchantable which in this case would mean that the oil was fit for use in compressors, or

   c. that the oil sold and delivered by defendants to plaintiff was sold where the seller knew the particular purpose for which the oil was required, to-wit, for use in compressors in a dairy and the buyer is relying upon seller's skill or judgment to furnish suitable oil whereby there was an implied warranty that the oil was fit for such purpose.

2. That plaintiff relied upon said seller's skill or judgment referred to in 1. c.

3. That the defendants failed to deliver oil which complied with the warranties so made.

4. That damage and loss accrued to plaintiff by reason of the failure to deliver oil which complied with the warranties made.

5. The amount of such loss or damage.

\*   \*   \*   \*   \*   \*

## Instruction No. 11

The statutes of Nebraska provide as follows:

"(1) Express warranties by the seller are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description. \* \* \*

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."

" \*   \*   \* (A) warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. \* \* \*

Goods to be merchantable must be at least such as

(a) pass without objection in the trade under the contract description; and \* \* \*

(c) are fit for the ordinary purposes for which such goods are used; \* \* \* "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose."

You are further instructed that:

"A 'particular purpose' differs from the ordinary purpose for which the

goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question."

Gillette did not object to the propriety of these instructions in respect to correct statements of applicable law. Gillette's only objection was the District Court's refusal to give Gillette's requested instructions which would have established as a matter of law certain warranties.

The evidence adduced at trial shows that the oil in question was purchased by Kenneth Raile, an employee of Gillette Dairy, from Marion Potter, a Hydrotex salesman. Mr. Raile was responsible for the operation and maintenance of the various compressors used in the dairy operation including the purchase of necessary lubricants. The evidence further demonstrated that Raile was a man of considerable experience in respect to machinery and heavy equipment. Raile testified that he first met Potter in the summer of 1966 when Potter was attempting to sell some Hydrotex lubricants for use in Gillette's fleet of trucks and, by means of various tests, demonstrated the lubrication qualities of some Hydrotex prod-

ucts. Raile stated that at this time Potter was "more or less interested in pushing lubricants * * * to our trucks for truck maintenance".

It was not until August 1966 that Raile and Potter discussed Hydrotex compressor oils. Potter recalled that he asked Raile whether he had a need for quality compressor oil and showed Raile a sales manual covering the oils. Potter testified that he had no way to demonstrate compressor oil and that the previous demonstrations seen by Raile did not involve compressor oils. Potter further testified that he possessed almost no knowledge or understanding of compressors and merely showed Raile the appropriate page in the sales manual and Raile selected the oil he wanted.

Raile testified that he purchased the compressor oil solely on the basis of the statements contained on that page of the sales manual shown him by Potter, Exhibit 1,[1] as well as certain oral statements made by Potter during these discussions. These oral statements by Potter were to the effect that Hydrotex oils were high quality oils and that other companies had used these oils with good success.

In addition to this testimony, Gillette, in support of the assigned error, points to the sales invoices on the 206A oil pur-

---

1. The only printed matter shown to Raile by Potter was a page from a sales book which contained the following statements:

EXHIBIT NO. 1
AIR COMPRESSOR OIL
Hydrotex Deluxe "Air Compressor Oil"
Electronically Film Processed

Characteristics
A pure non-corrosive medium viscosity pure mineral oil especially adapted for clean air compression lubrication. This lubricant has special cleanliness from residue and is not too heavy in body to cause bearing failure. Free from gums, tar, and acids.

General Recommendations
For single stage, double or multi-stage compressors where pressures are light and conditions dry, use our No. 205. Where pressures are medium and operating conditions damp to dusty, use our No. 206. Where pressures are heavy and conditions moist or dirty, use our No. 206-A, also use 206-A for Ammonia Compressors.

Scientifically Produced in Three Weights:
No. 205    Refrigeration Compressor Oil ................ Light Weight
No. 206    Gas Compressor Oil ........................ Medium Weight
No. 206-A  Ammonia Compressor Oil .................. Heavy Weight

chased by Gillette which contain the following statements:

"The Quality and Performance of all Hydrotex Products is Positively Guaranteed"

"Custom Made Oils—
Meeting major equipment manufacturer and government specifications
* * *"

Gillette thus contends that the evidence was without dispute that Hydrotex made two express warranties: (1) An express warranty guaranteeing the quality and performance of Hydrotex Oil No. 206A and (2) an express warranty that 206A oil would meet major equipment and manufacturer specifications for lubrication.

There are two prerequisites to the existence of the claimed express warranties made by Gillette. Initially there must be an affirmation of fact and, secondly, the factual affirmation must become a part of the basis of the bargain. Section 2–313, RRSN (Uniform Commercial Code).

Certainly the statements on the sales invoices amount to affirmations of fact although the record is not entirely clear as to whether "custom made oils" was ever defined to include compressor oil, particularly Hydrotex 206A. Moreover, as the trial court correctly instructed, the affirmations of fact must become part of the basis of the bargain before an express warranty is created.

■ Raile testified that he relied solely on the printed material in the sales manual and Potter's oral statements in respect to Hydrotex oils. Raile did not apparently rely on the warranties on the sales invoices in purchasing the oil. Therefore, we believe the question of whether the warranties on the sales invoices were affirmations of fact which become part of the basis of the bargain was properly submitted to the jury.

As for any express warranties created by virtue of Exhibit 1 or the oral representations made by Potter, Exhibit 1 speaks for itself and in regard to Potter's statements at the time of the original purchase by Gillette, the trial court properly instructed along the lines of Section 2–313(2) of the Uniform Commercial Code which provides:

* * * [A]n affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

We do not believe either Exhibit 1 or the statements by Potter were overwhelming evidence that any express warranties existed. We, therefore, find that the District Court on the basis of all the evidence was warranted in submitting the existence of express warranties to the jury. The evidence was not so predominant as to the existence of the express warranties to take this issue from the jury. *See* Sylvestri v. Warner & Swasey Co., 398 F.2d 598 (2d Cir. 1968); Brown v. Globe Laboratories, Inc., 165 Neb. 138, 84 N.W.2d 151 (1957); Capitol Equipment Enterprises, Inc. v. North Pier Terminal Co., 117 Ill.App.2d 264, 254 N.E.2d 542 (1969); McCormack v. Hankscraft Co., 278 Minn. 322, 154 N.W. 2d 488 (1967).

Gillette further contends that the question of whether an implied warranty of fitness for a particular purpose was made should not .have been submitted to the jury. Again, Gillette contends that the District Court should have instructed that an implied warranty existed as a matter of law. The trial court's instructions, not challenged here, followed Section 2–315 of the Uniform Commercial Code which requires two essential elements for the creation of an implied warranty. Initially, the seller must be shown to be aware, at the time the purchase is made, of the particular purpose for which the goods are required. The second element is that the buyer must be relying upon the seller's skill or judgment to select or furnish suitable goods.

Comment 1 to Section 2–315 states the following in regard to the existence of this implied warranty.

Whether or not this warranty arises in any individual case is basically a question of fact to be determined by the

circumstances of the contracting. Under this section the buyer need not bring home to the seller actual knowledge of the particular purpose for which the goods are intended or of his reliance on the seller's skill and judgment, if the circumstances are such that the seller has reason to realize the purpose intended or that the reliance exists. The buyer, of course, must actually be relying on the seller.

The one element of a warranty of fitness for a particular purpose which is almost always essentially factual in nature is the element of reliance. *See* Ertl Co. v. Lange Plastics Co., 158 N.W.2d 93 (Iowa 1968); Long v. Carpenter, 154 Neb. 862, 50 N.W.2d 67 (1951).

We believe the record evidence in respect to whether Raile relied on Potter's skill and judgment in light of their respective expertise in regard to compressors and the necessary lubrication was such that the District Court did not err in submitting this factual issue to the jury. *See* Maryland Cas. Co. v. Independent Metal Prods. Co., 203 F.2d 838 (8th Cir. 1953).

Affirmed.