[Civ. No. 3744.   Second Appellate District, Division One.—December 15, 1921.]

W. J. BUSH & COMPANY (a Corporation), Respondent, v. VAN CAMP SEA FOOD COMPANY (a Corporation), Appellant.

[1] Sale—Quality of Oil—Insufficient Warranty—Expression of Opinion.—The statement of a seller of peach kernel oil that it was equal to the best grades of imported olive oil was the mere expression of an opinion and wholly insufficient for reliance upon as a warranty.

[2] ID.—ACTION FOR BREACH OF WARRANTY—QUALITY OF OIL—CON-
FLICT OF EVIDENCE—FINDING—APPEAL.—Where in an action for an
alleged breach of warranty on a sale of peach kernel oil there was
a fair conflict of the evidence upon the question as to whether the
oil was of reasonably good quality, the finding is conclusive.

APPEAL from a judgment of the Superior Court of
San Diego County.  E. A. Luce, Judge.  Affirmed.

The facts are stated in the opinion of the court.

Kemp & Clewett and Patterson Sprigg for Appellant.

Wright & McKee for Respondent.

JAMES, J.—This action was brought by the plaintiff
to recover damages from the defendant for an alleged
breach of contract.  Plaintiff had judgment, from which
defendant appeals.

It is alleged in the complaint that on the fifteenth day
of August, 1918, defendant entered into a written contract
with the plaintiff whereby the plaintiff agreed to sell and
the defendant to buy 50,000 pounds of oil manufactured
from peach kernels at a price of thirty-six cents per pound;
that defendant accepted 4,800 pounds of the oil and refused
to accept any more; that the oil manufactured to fill de-
fendant's order was not resold and that the value of the
oil to the plaintiff was twenty-nine cents per pound.  The
difference of seven cents per pound for the unaccepted part
of the oil ordered was claimed as damages, according to the
measure fixed by section 3311 of the Civil Code.  The trial
court found that the value of the oil to the plaintiff was
thirty-one cents per pound, and calculated damages accord-
ingly at five cents per pound.  Upon defendant's part, the
answer alleged that the oil was sold under representations
that it was suitable for canning fish and sardines for human
consumption, and that for such purpose it was equal to
the "best grades of imported olive oil."  Under this allega-
tion defendant claimed an express warranty was made.  In
this connection and as supporting that defense there was
testimony tending to show that some of the oil delivered
contained stearine, which, expressed in ordinary terms, was
congealed vegetable fat appearing as white particles in the
oil.  The appellant insists that the defense of a particular

warranty was completely made out by the evidence. We will refer first to the evidence as to the circumstances under which contract was made, and the terms of the latter. It may be stated that it must be taken as established under all the evidence that peach kernel oil, of fair quality and free from stearine, is fit for human consumption and altogether suitable for use in the packing of sardines, which was the use to which the defendant intended to put it. The presence of stearine would be detrimental only as it affected the appearance of the oil. On August 7, 1918, the agent of the plaintiff, in response to previous inquiry, wired to the defendant a quotation of thirty-six cents per pound on peach kernel oil. On the same day the same agent addressed a letter to the defendant, confirming the quotation made in the telegram, and adding the following statement: ''Peach kernel oil or fruit kernel oil, as some of the packers call it, is the same as the sample I left with your Mr. Van Camp last year, and on which I quoted him. This is being used very successfully by a large number of the fish packers, and while we have been compelled to raise our price some on account of the price of raw material advancing, when you take into consideration the quality of the oil, which I believe for your purpose is equal to the best grades of imported olive oil, it is still low.'' On August 9th the defendant wired to plaintiff's agent as follows: ''Enter our order fifty thousand pounds peach kernel oil price terms your wire August seventh confirm.'' This order was acknowledged and confirmed by letter from plaintiff's agent dated August 9th, in which it was stated: ''As per your instructions I have entered your order for 50,000 lbs. or 125 drums at 400 lbs. each, to be taken as wanted up to January, 1919, terms to be net cash in 10 days. . . . You will note that I have given you until January to draw this oil. I believe the factory can deliver it all at once if you so wish.'' A letter from the defendant was received by the plaintiff in response to the last communication, in which defendant requested that a contract be forwarded covering the order. Such a contract was prepared under date of August 15, 1918, providing for deliveries to end December 31, 1918, and stating the price to be thirty-six cents per pound for 50,000 pounds, describing the merchandise simply as ''oil peach kernels.''

Referring first to the claim that there was a representation and, consequently, a warranty that the oil to be furnished would be equal to the best grades of imported olive oil: We think the conditions surrounding the transaction do not justify this claim. The letter of the agent which followed the telegram quoting the price, referred to a sample of oil left with Mr. Van Camp the preceding year, and expressed the opinion of the writer only that the oil for the purpose intended was equal to the best grades of olive oil. This opinion was expressed in connection with the statement as to an advance in price of the commodity. The statement was made, too, with the qualification that the oil was of the kind shown by sample previously left with Van Camp, who was at the head of defendant's establishment. Defendant, in the evidence furnished by it, made no denial as to its having been furnished a sample of kernel oil as stated in the letter. If it did in fact receive such a sample, then, irrespective of other considerations, it would have not the slightest ground for relying upon the opinion of the plaintiff's agent that the oil was equal to the best grade of olive oil for fish packing purposes. The packing of fish was the business of the defendant and it was better able to determine the suitability of oil for its purposes than was the plaintiff. [1] However, even without reference to the statement concerning the sample having been furnished, the expression comparing the product to olive oil expressed a mere opinion and could by no means be relied upon as a warranty. The trial court then had to determine first as to whether the peach kernel oil offered to be furnished by the plaintiff under its contract with the defendant was of reasonably good quality. In the manufacture of that oil it was common to find congealed portions which showed white in the liquid. A filtering process was used in connection with the production of the oil and, as the testimony showed, the greater part of the congealed portions was capable of being taken out. The filtering process was shown to have been made use of by the plaintiff, although it was admitted that occasionally a defective filter might permit some of the oil to retain a greater amount of stearine than other portions. Up to nearly the end of the year 1918 the defendant had required but little of the oil which it had contracted should be all delivered

by the end of December of that year. The fact is made clear by letters written by the defendant to plaintiff that the run of sardines had been sparse and consequently the cannery of the defendant had had little occasion for use of the oil. Some few drums had been furnished and accepted. On the 16th of November, 1918, the defendant wrote to the plaintiff as follows: "Referring to our contract of August 15th for peach kernel oil, we are inclined to think that it will be necessary for us to either cancel or materially reduce the quantity as the season is now far advanced and we are not receiving any sardines at all. We, therefore, suggest that you make an effort to sell elsewhere at least half or two-thirds of the quantity covered by our contract." To this letter the plaintiff replied, stating that in order to be prepared to fill the order given by the defendant it had purchased many tons of kernels and that the greater part of the oil was then ready to be shipped. adding: "We regret therefore that we cannot cancel the order or reduce the quantity we have to deliver to you. We might also add that we have a large stock of our own oil to dispose of." On December 12th the defendant wrote to the plaintiff, stating that the fish had been "running in a small way for the past week" and that it might be able to use the oil during the winter and spring if plaintiff would carry the stock for it. On December 31st plaintiff wrote to the defendant as follows: "We beg to inclose herewith invoice for 48,000 lbs. of oil which we are holding at our factory at National City and shall be glad to have your shipping instructions for same. This is in completion of contract dated August 15th, 1918." In January defendant requested 5,000 pounds of oil to be shipped, and on February 5th began to complain about the quality, stating that the appearance of stearine made it unsuitable for the intended use. From this time on the defendant continued to insist that the oil was not of good quality nor in accordance with the terms of the contract, and refused to accept the same, and expressed its rescission of the contract for that cause. A number of drums of oil which defendant returned to the plaintiff as containing a large amount of stearine, according to the testimony of the plaintiff's witness, contained but little, and that in certain of the drums only. The plaintiff at no time refused to furnish clear oil in lieu of oil in which an excessive amount of stearine was

present.   This, according to its testimony, which the court had before it in making up a decision.

[2]   We have suggested enough as to the situation respecting the testimony to show that there was a fair conflict of the evidence upon the question as to whether the oil furnished was of reasonably good quality.   The trial judge resolved the question of fact in favor of the plaintiff as to that matter, and with that determination the defendant must be content.   Nor are we inclined to agree with appellant that the amount of damage for which judgment was allowed is not supported by the evidence.   There was testimony to show that the plaintiff was the only business concern engaged in manufacturing kernel oil in the United States; that there was no regular or constant market for the product.   It was shown that plaintiff purchased raw material in anticipation of its requirements in order to fill the order of the defendant, and that at the time of the refusal of the defendant to accept more oil it had on hand a great deal more than enough oil to complete this order.   There was testimony from which the court could reasonably conclude that this oil manufactured for the defendant could not readily be disposed of at the time of the attempted rescission.   Plaintiff certainly was not called upon to dispose of oil contracted for by the defendant in preference to other oil in stock and which it had intended for the general market.   Without narrating any considerable part of the testimony to the point, we think it sufficient to state further that, in our opinion, there was enough evidence as to conditions and circumstances concerned in the manufacture of kernel oil and as to the market to warrant the trial judge in deducing as he did that the value of the oil to the plaintiff was the sum of thirty-one cents per pound. Agreeing with that conclusion, it follows that the amount of damage was correctly estimated at the sum which is fixed by the judgment.   As to whether there was error in the admission of any of the testimony is not important to be discussed, because on the whole case we are well satisfied that any such error as is complained of was not so prejudicial as to have produced in this case a miscarriage of justice.   (Sec. 4½, art. VI, Const.)

The judgment is affirmed.

Conrey, P. J., and Shaw, J., concurred.