[Civ. No. 4479. First Appellate District, Division One.—October 14, 1924.]

A. M. BLUMER, Respondent, v. J. J. RAUER et al., Defendants; FRANCES RAUER, Appellant.

[1] CONTRACTS—SALE OF FERTILIZER—ACTION TO RECOVER PURCHASE PRICE—EVIDENCE—FINDINGS—JUDGMENT.—In this action to recover the contract purchase price of three carloads of fertilizer, the findings of the trial court were sufficient in form and substance, and those that were essential to support the judgment in favor of plaintiff for the full amount sued for, together with interest thereon from the date of the delivery of said fertilizer, were amply sustained by the evidence.

[2] ID.—ISSUES—IMMATERIAL FINDINGS.—In such action, the trial court, upon substantial evidence, having found in favor of plaintiff upon the main issues, the further general finding that the allegations contained in the answer and cross-complaint of defendant "are not true," whereas certain of the incidental matters therein pleaded were admitted or were proved to be true by uncontradicted evidence, was of no consequence, as findings in favor of defendant on the allegations in question would not have affected the ultimate decision of the case.

[3] ID.—PARTIES—PLEADING—FINDINGS—JUDGMENTS.—In such action, although the complaint charged the defendants, husband and wife,

———

3. See 13 Cal. Jur. 894.

with liability for the purchase price of the fertilizer, the evidence having shown, and the trial court found, that the entire transaction was opened, carried on, and consummated exclusively by the wife, judgment was properly entered against her alone.

[4] ID. — SALE OF EXCRETA OF DOMESTIC ANIMALS — COMMERCIAL FERTILIZER ACT.—In such action, the evidence having shown, and the trial court found, that the fertilizer in question consisted of excreta of domestic animals, mixed with material commonly used for bedding and not artificially added, the sale thereof was specifically excepted from the provisions of the so-called Commercial Fertilizer Act.

[5] ID.—USE OF FERTILIZER—REPRESENTATIONS AS TO RESULTS—WARRANTY—EXPRESSION OF OPINION.—The representations by plaintiff "that such stockyard manure mixtures were of such quality that they would increase the productiveness" of defendant's vineyard "by greatly enriching the soil thereof if three carloads were applied to the same and would increase the productiveness of the said vineyard . . . to the extent of doubling the crop of grapes to be grown thereon," did not amount to a warranty, but were merely an expression of opinion.

(1) 35 Cyc., pp. 572, 578.   (2) 4 C. J., p. 1057, sec. 3041.   (3) 13 C. J., p. 755, sec. 921, p. 798, sec. 1034.   (4) 2 C. J., p. 999, sec. 32. (5) 35 Cyc., p. 383.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. E. P. Mogan, Judge. Affirmed.

The facts are stated in the opinion of the court.

H. M. Anthony for Appellant.

E. L. Chloupek for Respondent.

KNIGHT, J.—The defendant Frances Rauer appeals from a judgment rendered against her and in favor of plaintiff A. M. Blumer for the payment of the sum of $1,255.45 on account of the sale to defendant of three carloads of fertilizer weighing 139⅔ tons. In her answer appellant ad-

4. Validity of contract for sale of fertilizer where statutory regulations not complied with, notes, 12 L. R. A. (N. S.) 596; 43 L. R. A. (N. S.) 1109.

5. Test of what constitutes warranty, note, Ann. Cas. 1913C, 711.

mitted the delivery of 100 tons of said fertilizer but claimed that the same was not of the quality bargained for and that the weight in excess of one hundred tons represented the water, rice hulls, and sand with which said fertilizer was mixed. Appellant also pleaded that said sale was made by respondent in violation of the so-called Commercial Fertilizer Act. In a cross-complaint appellant alleged that respondent made representations preceding and at the time of the sale to the effect that the application of said fertilizer to the soil of appellant's vineyard would double the crop of grapes to be grown thereon; whereas, as a matter of fact, instead of doubling said crop the tonnage of grapes grown during the year following fertilization decreased nearly one-half as compared with the crop grown the previous year. Appellant prayed for judgment against respondent for the sum of $2,420, as damages for loss of the anticipated grape crop and for the further sum of $350 to cover the freight and transportation charges of said fertilizer.

It appears from the evidence that at the time of said sale respondent was engaged in the business of selling manure from corrals and feeding-pens of J. P. Holland located in "Butchertown," south of the city of San Francisco. Said corrals and pens were used for the purpose of fattening livestock for market, and rice hulls were used as a bedding to keep said livestock clean. During the latter part of December, 1920, appellant having heard of the quality of the fertilizer from the Holland corrals negotiated with respondent for the purchase of a quantity thereof to be used by her upon the soil of the vineyard belonging to her situate near San Martin, Santa Clara County. A written memorandum of agreement was prepared and signed on January 4, 1921, calling for 100 tons of "manure mixtures" at $8 a ton, to be delivered "as soon as advised" by appellant; shipments to be made two or three days apart. There is a conflict in the testimony regarding the quantity that was to be shipped. Respondent claims he told appellant that 100 tons would amount to a two-carload shipment and that appellant also reserved the right to obtain a third carload at the same price. Appellant asserts that respondent stated that 100 tons would constitute a three-carload shipment and that she made no reservation for additional fertilizer. However that may be,

on January 7, 1921, appellant phoned to respondent's office to the effect that she would take three carloads of said fertilizer, but that she did not want more than 120 tons, and requested that shipments begin at once. On January 10th, the first carload was shipped, followed by the other two on January 12th and January 14th. Upon arrival of the fertilizer at San Martin part of the same was unloaded by appellant's employee and said employee then phoned appellant that there was something wrong with the quality of said fertilizer and requested appellant to come at once to inspect it. She arrived the following day and after finding rice hulls and water mixed with said fertilizer endeavored to phone respondent about the matter, but ascertained that he was absent from San Francisco. She then made complaint to respondent's employee and the latter promised to go to San Martin to examine said fertilizer. Appellant's employees continued, however, to unload said cars, but instead of spreading the fertilizer upon the soil of the vineyard, it was dumped in piles along the side of a road and as a matter of fact was not applied to the soil of the vineyard until the following March, after this suit had been commenced. There was much other evidence given in the case on other matters. Experts, both professional and practical, testified regarding the quality of said fertilizer, the results of laboratory tests made of the same, the consequence of mixing rice hulls with said fertilizer and the detrimental effect of allowing said fertilizer to remain in piles along said road exposed to the rain during the months of January and February and part of the month of March. Further evidence was offered to show that the crop shortage complained of was caused, not by inferior quality of fertilizer, but by severe frosts and other climatic conditions. We think it unnecessary to narrate the evidence in any greater detail than has already been done for the reason that in any event it merely presents a conflict of proof as to certain points upon which the trial court found adversely to appellant's claims. The trial court found generally in favor of the plaintiff on all material issues and judgment in his favor followed for the full amount sued for, together with interest thereon from the date of the delivery of said fertilizer.

Respondent upon this appeal first attacks the findings and contends in this respect that the same are either not supported by the evidence, or are contrary thereto and to the admissions made by the pleadings.

[1] An analysis of the findings, however, proves that they are sufficient in form and in substance. Those that are essential to support the judgment are amply sustained by the evidence and it would seem that appellant's objections thereto are of a purely technical nature. For instance, appellant objects to the finding to the effect that appellant by an agreement in writing reserved the right to order a third carload of fertilizer at the same price quoted on the first two carloads, claiming that said agreement in writing did not contain any such reservation. It would seem to matter little whether said reservation was in writing or not, in view of the fact that there is direct evidence to prove, and in fact appellant does not deny, that she ordered three carloads of fertilizer, and that three carloads thereof were delivered to and unloaded by her. There was also direct evidence to the effect that she agreed to pay the same price for the third carload, if ordered.

Again, it was alleged in the cross-complaint that appellant was the owner of a vineyard near San Mateo consisting of twenty-six acres; that it was in need of stock manure; that respondent represented that the fertilizer sold by him consisted of the mixture of the excreta from several different kinds of animals and was of the best quality; that if applied to appellant's vineyard the crop yield would be doubled; that as a matter of fact said fertilizer did not consist of the kind of manure represented but was made up principally of a mixture of rice hulls, sand, and water; that if said fertilizer had been of the kind represented that said vineyard would have produced a greatly increased crop, and that appellant expended $200 in spreading said fertilizer. The trial court negatived these and all other allegations of the cross-complaint by a general finding "that the allegations contained in defendant's answer and in her cross-complaint are not true," and also found specifically against the truth of many of them.

[2] Appellant now contends that those allegations and some others of like character were either proved to be true

by uncontradicted evidence or were admitted by the pleadings and that therefore the findings thereon to the effect that they were true are erroneous. It may be conceded that appellant's contention, to a certain extent, is true. Nevertheless it will be observed that the findings complained of relate to matters of opinion or to allegations of fact which are material only when considered as a part of the main issues. Inasmuch as the findings upon the main issues are, as before stated, supported by ample evidence, the findings upon the incidental matters become of no consequence. The trial court may well have found with appellant upon all of the allegations referred to and still the ultimate decision of the case would necessarily have been the same in view of the other findings upon the main issues.

[3] Appellant next urges that "there is a variance between the complaint and findings." In this regard it is contended "that although the complaint counts upon either an agreement by *both* defendants (Rauer and his wife) *or* a sale and delivery to *both* defendants, the decision finds a contract as to a portion of the merchandise made by only one defendant—namely, Frances Rauer." There is no merit in the point. While the complaint did charge both defendants with liability, the evidence proved that the entire transaction was opened, carried on, and consummated exclusively by Frances Rauer. The decision of the court correctly so found and the judgment was entered accordingly against Frances Rauer alone.

[4] The further contention urged by appellant that the sale herein was made in violation of the so-called Commercial Fertilizer Act because the fertilizer in question was not certified and labeled as in said act required (Stats. 1903, p. 259; Stats 1911, p. 488; Stats. 1915, p. 42) is also without merit. The evidence shows, and the court found, that the fertilizer in question consisted of the excreta of domestic animals, mixed with material commonly used for bedding and not artificially added, and said act expressly excepts from the operation of its provisions fertilizer of that kind.

[5] Appellant's last point is that "there was an express warranty by plaintiff which was breached," claiming in support thereof that respondent represented "that such stockyard manure mixtures were of such quality that they would

increase the productiveness of cross-complainant's vineyard by greatly enriching the soil thereof if three carloads were applied to the same and would increase the productiveness of the said vineyard of cross-complainant to the extent of doubling the crop of grapes to be grown thereon.'' A casual reading of the alleged representations is sufficient to prove without discussion that said representations did not amount to a warranty at all but were merely an expression of opinion. There was nothing contained in the written memorandum of the agreement regarding the possibilities of said fertilizer, and so far as appellant's shortage of crop is concerned it may be readily accounted for by the fact that the said fertilizer lost its potential qualities because it was allowed to remain in the rain in piles along the side of the road for several weeks before it was applied to the vineyard, and by the further fact that frosts visited that section during the month of April, 1921.

Judgment affirmed.

St. Sure, J., and Cabaniss, P. J., *pro tem.*, concurred.