Capital Equipment Enterprises, Inc., Plaintiff-Appellee, v. North Pier Terminal Company, a Corporation, Defendant-Appellant.

Gen. No. 52,599.

First District.

December 5, 1969.

Robert H. Joyce, George J. Matkov, George E. Preonas, Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for appellant.

Harry Shriman, Shriman & Feldman, of Chicago, for appellee.

GOLDENHERSH, P. J.

Defendant, North Pier Terminal Company, appeals from the judgment of the Circuit Court of Cook County entered upon a jury verdict in the amount of $5,416. This action arises out of a transaction in which defendant sold plaintiff a used crane, and is based on the alleged breach of express warranties as to the crane's condition and lifting capacity.

The evidence shows that in the summer of 1961 defendant inserted the following advertisement in a publication called "Industrial Market Place":

"CRANE—Railroad 30-ton McMyler Cummins diesel engine; 55 ft. hvy. duty boom; complete with generator for magnet work. Good condition."

Murray Grainger, plaintiff's president, requested additional information with respect to the crane and defendant replied by letter, which contained the following statements:

"2. This crane is a 30 ton McMyler locomotive crane equipped with a Cummins Diesel, engine, generator, and a 55 ft. boom.

". . .

"4. It was rebuilt in 1953 at which time the diesel engine was installed. Some time ago we acquired a much larger crane which is adequate for all our stevedoring activities. Therefore we find that although most serviceable the crane offered for sale is seldom being used."

Plaintiff, a dealer in used equipment, made efforts to sell the crane. Mr. Grainger and Stanley Huggett, defendant's vice president, arranged for a demonstration and inspection, and in July 1962, Grainger came to Chicago in the company of a representative of a prospective customer. The demonstration was conducted by defendant's employees; the crane, which rides on railroad tracks, was driven down the tracks, the cab was rotated, and the boom and lifting line were raised and lowered. No actual lifting was done.

Mr. Grainger testified that he asked defendant's foreman, Mr. Rodriguez, and the crane operator, if the crane could lift 30 tons, and both answered in the affirmative. Rodriguez told him the crane was in "very good condition."

Plaintiff's prospective customer did not buy the crane, and in September 1962, plaintiff bought it. The purchase order upon which the sale was made provides:

## "DESCRIPTION

"1–Used Locomotive Crane, Manufactured by Mc-Myler, 30 ton capacity, 55 ft. boom, complete with Cummins Diesel Engine and Generator.

"Prepared for shipment and accepted by the railroad for travel on its own wheels.

"Price, F. O. T. Chicago . . . . . . . . . . . . . . . . . $4,000.00

"Delivery:

"The crane can be left at its present location for six months until resold. During that time we will be allowed to have it inspected in operation by our potential customers. When it is resold by us, it will then be prepared by you for rail shipment at which time we will pay you the necessary additional miscellaneous charges for preparing it for shipment not to exceed $300.00."

In July of 1963 plaintiff requested a second demonstration of the crane for another customer, who subsequently agreed to lease it. This demonstration was essentially the same as the prior one.

In August 1963, at plaintiff's request, defendant prepared the crane for shipment, under the direction of the Rock Island Railroad. It arrived at the lessee's premises approximately 2 weeks later. The lessee informed plaintiff that the crane would not operate.

An expert called by plaintiff testified he had examined the crane in October 1963, and in his opinion, it was inoperable. In response to a hypothetical question he expressed the opinion that 9 months previously, assuming the machine had not been operated in the interim period, it was inoperable, because "part of the pieces were missing." Essential parts were missing, the boom could not be raised, drums were rusty and pitted, the clutch could not be energized, and the clutch band was disintegrated

267

due to lack of usage. He could not state how long the deteriorating conditions had been present, but the rusting and pitting were older than 9 months. He further stated that the boom could not be raised and lowered manually. He was unable to express an opinion as to why the boom operated at the demonstrations above described. There is no evidence as to what happened to the missing parts, or as to the manner in which the crane was reassembled after its arrival in New Jersey, or by whom.

Mr. Rodriguez denied making the statements to which Mr. Grainger testified. He stated that the crane was generally used to lift loads of 1 to 5 tons, and he had never seen it lift more than 10 tons. He testified that although the crane was running, he would not say it was in good condition. It was not used after the sale. He was in charge of preparing the crane for shipment and does not know if any parts were missing at that time.

Plaintiff paid shipping charges in the amount of $1,416, and the verdict is in the amount expended by plaintiff for the purchase price and shipping charges.

As grounds for reversal defendant contends that no express warranties were created; the words "30-ton McMyler Crane" are descriptive of its make and model and do not create a warranty of its capacity to lift 30 tons; defendant's employees were without authority to make the warranties allegedly created by their statements; assuming arguendo, defendant made warranties, the evidence fails to show the crane was not in good condition at the time of sale, and no breach of warranty is proved; and plaintiff's counsel made prejudicial statements in final argument.

Chapter 26, § 2–313, Ill Rev Stats 1967, provides:

> "(1)  Express warranties by the seller are created as follows:
>
>> "(a)  Any affirmation of fact or promise made by the seller to the buyer which

relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

"(b)  Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

"(2)  It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."

The comment by William B. Davenport (Smith-Hurd Illinois Annotated Statutes) contains the following:

"The question of whether a warranty exists under this subsection in a case not involving an integrated contract (see § 2–202) is, thus, a factual issue, as it was under the Sales Act."

This statement is supported by the authorities cited (see page 218, Annotated Statute) and the earlier case of Thorne v. McVeagh, 75 Ill 81.

The jury were instructed that before plaintiff could recover, it must prove there was a warranty upon which plaintiff relied in purchasing the crane, that the warranty induced the purchase and the crane was not as warranted. They were further instructed that they could not consider any oral statements made by defendant concerning the condition of the crane unless plaintiff relied upon such oral statements and was induced thereby to enter into the purchase agreement.

269

■ The advertisement, defendant's letter, the language of the purchase order and Rodriguez's statement to Grainger suffice to support the verdict.

■■ Defendant argues that plaintiff clearly did not rely on the warranty and purchased the crane after a demonstration of its operability and capacity. Plaintiff's expert testified that a thorough examination of the crane required eight hours, and clearly plaintiff made no such inspection at the time of the demonstration. An inspection does not preclude reliance upon an express warranty if the facts are not discovered by means of the inspection. Hodgman v. State Line & Sullivan R. Co., 45 Ill App 395; City of Paragould v. International Power Mach. Co., 233 Ark 872, 349 SW2d 332. The evidence is sufficient to support a finding that plaintiff, in purchasing the crane, relied on the warranty.

■ Defendant contends that assuming Rodriguez made the statements attributed to him, he was without authority so to do. The evidence shows that defendant's vice president referred inquiries to Rodriguez, and testified that the foreman (Rodriguez) knew more about the condition of the equipment than anyone else. Under these circumstances Rodriguez's statements that the crane was in good condition were within the scope of his authority. 2 Mechem on Agencies, 2nd Ed, § 1778; Wasatch Chemical Co. v. Leon, 123 Utah 296, 259 P2d 301.

■ We next consider defendant's contention that assuming, arguendo, defendant made warranties, the evidence fails to prove the crane was not in good condition at the time of the sale, and no breach of warranty was shown. Rodriguez's testimony that although the crane was operable it was not in good condition at the time of the sale is sufficient to support the verdict.

■ We have reviewed the closing arguments and have carefully examined the matters with respect to which defendant complains. A review of its contentions

270

would be of no precedential value. It suffices to say that the record reflects no abuse of discretion on the part of the trial court, and absent such abuse its rulings with respect to the arguments are upheld. *City of Chicago v. Chicago Title & Trust Co.*, 331 Ill 322, 163 NE 17.

For the reasons stated the judgment of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

MORAN and EBERSPACHER, JJ., concur.