[L.A. No. 30216. In Bank. Apr. 28, 1975.]

FRED E. HAUTER, JR., a Minor, etc., et al.,
Plaintiffs and Respondents, v.
RUDY C. ZOGARTS et al.,
Defendants and Appellants.

Counsel

Chase, Rotchford, Drukker & Bogust, Ronald A. Dwyer, W. Michael Hartman, Groff, Dunne, Shallcross & Kane and Russell E. Shallcross for Defendants and Appellants.

Getz, Aikens & Manning and George E. Leaver for Plaintiffs and Respondents.

Opinion

**TOBRINER, J.**—After the jury found for defendants in this products liability case, the trial court granted plaintiff's motion for judgment notwithstanding the verdict. (Code Civ. Proc., § 629.) Defendants appeal, claiming that substantial evidence supports the jury's verdict.

We discuss below each theory of liability: plaintiff's first cause of action for misrepresentation, their second cause of action for breach of express and implied warranties, and their third cause of action for strict liability in tort based on the defective design of defendants' product. We have concluded that plaintiffs are entitled to recover as a matter of law under each theory and, therefore, we affirm the trial court's order of judgment notwithstanding the verdict.

1. *The facts.*

 Defendants[1] manufacture and sell the "Golfing Gizmo" (hereinafter Gizmo), a training device designed to aid unskilled golfers improve their games. Defendants' catalogue states that the Gizmo is a "completely equipped backyard driving range." In 1966, Louise Hauter purchased a Gizmo from the catalogue and gave it to Fred Hauter, her 13½-year-old son, as a Christmas present.

The Gizmo is a simple device consisting of two metal pegs, two cords—one elastic, one cotton—and a regulation golf ball. After the pegs are driven into the ground approximately 25 inches apart, the elastic cord is looped over them. The cotton cord, measuring 21 feet in length, ties to the middle of the elastic cord. The ball is attached to the end of

[1]Defendants are Rudy C. Zogarts, who does business as House of Zog [manufacturer] and Miles Kimball Company [seller].

the cotton cord. When the cords are extended, the Gizmo resembles the shape of a large letter "T," with the ball resting at the base.

The user stands by the ball in order to hit his practice shots. The instructions state that when hit correctly, the ball will fly out and spring back near the point of impact; if the ball returns to the left, it indicates a right-hander's "slice"; a shot returning to the right indicates a right-hander's "hook." If the ball is "topped," it does not return and must be retrieved by the player. The label on the shipping carton and the cover of the instruction booklet urge players to "drive the ball with full power" and further state: "COMPLETELY SAFE BALL WILL NOT HIT PLAYER."

On July 14, 1967, Fred Hauter was seriously injured while using defendants' product. Thereafter, plaintiffs filed the instant suit on his behalf, claiming false representation, breach of express and implied warranties and strict liability in tort.

Fred Hauter testified at trial that prior to his injury, he had practiced golf 10 to 20 times at driving ranges and had played several rounds of golf. His father instructed him in the correct use of the Gizmo. Fred had read the printed instructions that accompany the product and had used the Gizmo about a dozen times. Before the accident, Fred set up the Gizmo in his front yard according to the printed instructions. The area was free of objects that might have caused the ball to ricochet, and no other persons were nearby. Fred then took his normal swing with a seven-iron. The last thing he remembers was extreme pain and dizziness. After a period of unconsciousness, he staggered into the house and told his mother that he had been hit on the head by the ball. He suffered brain damage and, in one doctor's opinion, is currently an epileptic.

George Peters, a safety engineer and an expert on the analysis and reconstruction of accidents, testified for plaintiffs. In Peters' opinion, Fred Hauter had hit underneath the ball and had caught the cord with his golf club, thus drawing the cord upwards and toward him on his follow-through. The ball looped over the club producing a "bolo" effect and struck Fred on the left temple. Peters, an expert on the cause of accidents, concluded that the Gizmo is a "major hazard."

Ray Catan, a professional golfer, also testified for plaintiffs. He added that even if the club had hit the lower part of the ball, the same result probably would have occurred. He personally tested the Gizmo, intentionally hitting low shots, and found that his club became entangled

in the cord, bringing the ball back toward him as he completed his swing. Describing Fred Hauter as a beginner, Catan stated that since such a golfer's swing usually is very erratic, he rarely hits the ball solidly.

Defendants did not dispute plaintiffs' version of the accident. The manufacturer merely stated that he bought the rights to manufacture and distribute the Gizmo from a former professional golfer in 1962 and that the product had been on the market since that time.

Following a unanimous jury verdict for defendants on each cause of action, the trial judge granted plaintiffs' motion for judgment notwithstanding the verdict and plaintiffs' alternative motion for a new trial.[2] Defendants have limited their appeal to the order granting judgment notwithstanding the verdict.

2. *A judgment notwithstanding the verdict is proper only when no substantial evidence and no reasonable inference therefrom support the jury's verdict.*

■ The trial judge's power to grant a judgment notwithstanding the verdict is identical to his power to grant a directed verdict. (*Jones v. Evans* (1970) 4 Cal.App.3d 115, 122 [84 Cal.Rptr. 6]; *Gordon v. Strawther Enterprises, Inc.* (1969) 273 Cal.App.2d 504, 515 [78 Cal.Rptr. 417, 39 A.L.R.3d 809]; 4 Witkin, Cal. Procedure (2d ed. 1971) § 374, p. 3168.) ■ The trial judge cannot weigh the evidence (*Quintal v. Laurel Grove Hospital* (1964) 62 Cal.2d 154, 159 [41 Cal.Rptr. 577, 397 P.2d 161]), or judge the credibility of witnesses. (*Knight v. Contracting Engineers Co.* (1961) 194 Cal.App.2d 435, 442 [15 Cal.Rptr. 194].) If the evidence is conflicting or if several reasonable inferences may be drawn, the motion for judgment notwithstanding the verdict should be denied. (*McCown v. Spencer* (1970) 8 Cal.App.3d 216, 226 [87 Cal.Rptr. 213]; *Hozz v. Felder* (1959) 167 Cal.App.2d 197, 200 [334 P.2d 159].) "A motion for judgment notwithstanding the verdict of a jury may properly be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence to support the verdict. If there is any substantial evidence, or reasonable inferences to be drawn therefrom, in support of the verdict, the motion should be denied." (*Brandenburg v. Pac. Gas & Elec. Co.* (1946) 28 Cal.2d 282, 284 [169 P.2d 909].)

---

[2]Under Code of Civil Procedure, section 629, the order granting a new trial becomes effective only if the order granting judgment notwithstanding the verdict is reversed on appeal.

■ Although an appellate court is bound to view the evidence in the light most favorable to the party securing the verdict, our review of the record discloses no evidence nor any reasonable inference therefrom which supports the jury's verdict. ■ As we explain below, the evidence leads to a contrary conclusion—that plaintiffs should recover as a matter of law under each cause of action. For that reason, the trial court properly granted plaintiffs' motion for judgment notwithstanding the verdict.

3. *As a matter of law, plaintiffs should recover on their cause of action for false representation.*

Plaintiffs' claim of false representation relies on common law tort principles reflected in section 402B of the Restatement Second of Torts.[3] For plaintiffs to recover under this section, defendants' statement "COMPLETELY SAFE BALL WILL NOT HIT PLAYER" must be a misrepresentation of material fact upon which plaintiffs justifiably relied. (Rest. 2d Torts, § 402B, coms. f, g, and j.)[4]

If defendants' assertion of safety is merely a statement of opinion— mere "puffing"—they cannot be held liable for its falsity. (Cf. *Willson* v. *Municipal Bond Co.* (1936) 7 Cal.2d 144, 150 [59 P.2d 974]; *Pacesetter Homes, Inc.* v. *Brodkin* (1970) 5 Cal.App.3d 206, 211-212 [85 Cal.Rptr. 39].)[5] Defendants' statement is so broad, however, that it properly falls

---

[3]Section 402B provides: "One engaged in the business of selling chattels who, by advertising, labels, or otherwise, makes to the public a misrepresentation of a material fact concerning the character or quality of a chattel sold by him is subject to liability for physical harm to a consumer of the chattel caused by justifiable reliance upon the misrepresentation, even though

"(a) it is not made fraudulently or negligently, and

"(b) the consumer has not bought the chattel from or entered into any contractual relation with the seller." (See also Civ. Code, § 1572.)

[4]The fact that Fred Hauter did not purchase the Gizmo and hence is not in "privity" with defendants does not bar his claim of false representation. Section 402B eliminates the privity requirement and affords protection to all injured consumers. (Rest. 2d Torts, 402B, com. i.)

[5]California case law is replete with examples of sellers who have "puffed" their wares. (See *Williams* v. *Lowenthal* (1932) 124 Cal.App. 179 [12 P.2d 75] [jukebox a "good machine" and "would probably not get out of order"]; *Steen* v. *Southern Cal. Supply Co.* (1925) 74 Cal.App. 265 [239 P. 1098] [caramel coloring matter "just as good or perhaps better than any"]; *Blumer* v. *Rauer* (1924) 69 Cal.App. 195 [230 P. 964] [fertilizer would increase productivity of vineyard]; *W. J. Bush & Co.* v. *Van Camp Sea Food Co.* (1921) 55 Cal.App. 672 [203 P. 1026] [peach kernel oil was "equal to the best grades of imported olive oil"]; *Alexander* v. *Stone* (1916) 29 Cal.App. 488 [156 P. 998] [goods "first class"]; see also, *Performance Motors, Inc.* v. *Allen* (1972) 280 N.C. 385 [186 S.E.2d 161] [mobile home would "last a lifetime"]; *Jacquot* v. *Wm. Filene's Sons Co.* (1958) 337 Mass. 312

within the ambit of section 402B. The assertion that the Gizmo is completely safe, that the ball will not hit the player, does not indicate the seller's subjective opinion about the merits of his product but rather factually describes an important characteristic of the product. Courts have consistently held similar promises of safety to be representations of fact. (See, e.g., *McCormack* v. *Hankscraft Co.* (1967) 278 Minn. 322 [154 N.W.2d 488] [vaporizer called "safe" and "practically foolproof"]; *Spiegel* v. *Saks 34th St.* (1964) 43 Misc.2d 1065, 1070 [252 N.Y.S.2d 852] [representation that cosmetic was "safe"]; *Pritchard* v. *Liggett & Myers Tobacco Company* (3d Cir. 1961) 295 F.2d 292, 301 (concurring opn.) [representation that cigarettes "can cause no ills"]; *Hansen* v. *Firestone Tire and Rubber Company* (6th Cir. 1960) 276 F.2d 254, 259 [tires described as "safe" within stated limits]; *Hamon* v. *Digliani* (1961) 148 Conn. 710, 718 [174 A.2d 294] [representation implying that detergent was safe for all household tasks]; *Rogers* v. *Toni Home Permanent Co.* (1958) 167 Ohio St. 244, 249 [4 Ohio Ops.2d 291, 147 N.E.2d 612, 75 A.L.R.2d 103] [permanent wave solution represented as safe and harmless].)

These decisions evidence the trend toward narrowing the scope of "puffing" and expanding the liability that flows from broad statements of manufacturers as to the quality of their products.[6] Courts have come to construe unqualified statements such as the instant one liberally in favor of injured consumers.[7] Furthermore, the illustrations in the Restatement indicate that the assertion "COMPLETELY SAFE BALL WILL NOT HIT

[149 N.E.2d 635] [artificial fingernail kit described as "wonderful"]; *Silverman* v. *Samuel Mallinger Co.* (1954) 375 Pa. 422 [100 A.2d 715] [glassware "as good anyone else's"].)

In the instant case, for example, defendant seller appears to "puff" when he says in his catalogue, "[y]ou may be a duffer and divot digger but just give yourself a few hours with this and you'll be challenging Jack Nicklaus! . . . Practice with [the Gizmo] and you'll have even your golf pro watching admiringly."

[6]See 1 Carroll, California Commercial Law (Cont. Ed. Bar 1966) sections 6.10-6.11, page 212; Comment, *Express Warranties and Greater Consumer Protection from Sales Talk* (1966) 50 Marq.L.Rev. 88, 89-90; Ezer, *The Impact of the Uniform Commercial Code on the California Law of Sales Warranties* (1961) 8 U.C.L.A. L.Rev. 281, 286 and footnote 38.

[7]*Lane* v. *C. A. Swanson & Sons* (1955) 130 Cal.App.2d 210, 214-215 [278 P.2d 723]; *Luitweiler etc. Co.* v. *Ukiah etc. Co.* (1911) 16 Cal.App. 198, 206 [116 P. 707, 712].

Although courts traditionally have allowed the seller considerable latitude in which to "puff" the virtues of his product, "[t]he tendency of the modern cases is to construe liberally in favor of the buyer language used by the seller in making affirmations respecting the quality of his goods and to enlarge the responsibility of the seller to construe every affirmation by him to be a warranty when such construction is at all reasonable." (*Lane* v. *C. A. Swanson & Sons, supra,* at pp. 214-215.)

This expansion of sellers' liability has been necessary to counteract the shrewd technique of those sellers who, instead of making broad factual assertions about their products, seek to couch their representations in opinion form.

PLAYER" constitutes a factual representation. Defendants' statement parallels that of an automobile dealer who asserts that the windshield of a car is "shatterproof." (Rest. 2d Torts, § 402B, illus. 1, based on *Baxter* v. *Ford Motor Co.* (1932) 168 Wash. 456, 461-463 [12 P.2d 409, 15 P.2d 1118, 88 A.L.R. 521]), or that of a manufacturer who guarantees his product is "safe" if used as directed (Rest. 2d Torts, § 402B, illus. 3, based on *Rogers* v. *Toni Home Permanent Co.* (1958) 167 Ohio St. 244, 259 [4 Ohio Ops.2d 291, 147 N.E.2d 612, 75 A.L.R.2d 103], and *Markovich* v. *McKesson & Robbins, Inc.* (1958) 106 Ohio App. 265 [7 Ohio Ops.2d 10, 78 Ohio L. Abs. 111, 149 N.E.2d 181, 186].)

Moreover, the materiality of defendants' representation can hardly be questioned; anyone learning to play golf naturally searches for a product that enables him to learn safely. Fred Hauter's testimony that he was impressed with the safety of the item demonstrates the importance of defendants' statement. That Fred's injury occurred while he used the Gizmo as instructed proves the inaccuracy of the assertion on the carton.

Defendants, however, maintain that plaintiffs' reliance upon the assurance of safety is not justifiable. (See Rest. 2d Torts, § 402B, com. j.) Alluding to the danger inherent to the sport, defendants argue that the Gizmo is a "completely safe" training device only when the ball is hit squarely. Defendants repeatedly state that an improperly hit golf shot exposes the player, as well as others nearby, to a serious risk of harm; they point to testimony recounting how an experienced player once hit a shot so poorly that the ball flew between his legs. As a result, contend defendants, plaintiffs cannot reasonably expect the Gizmo to be "completely safe" under all circumstances, particularly those in which the player hits beneath the ball.

Defendants' argument does not withstand analysis. Fred Hauter was not "playing golf." He was home on his front lawn *learning* to play the game with the aid of defendants' supposedly danger-free training device. By practicing in an open, isolated area apart from other golfers and free of objects off which a poorly hit shot could ricochet, Fred Hauter *eliminated* most of the dangers present during a normal round of play. Moreover, even though certain dangers are inherent in playing golf, the risk that the golfer's own ball will wrap itself around his club and strike the golfer on the follow-through is not among those dangers. Fred Hauter's injury stemmed from a risk inherent in defendants' product, not a risk inherent in the game of golf.

Additionally, defendants' analysis would render their representation of safety illusory. Were we to adopt their analysis, the words "COMPLETELY SAFE BALL WILL NOT HIT PLAYER" would afford protection to consumers only in *relatively infrequent instances* in which the "duffers" using the Gizmo managed to hit the ball solidly. Yet defendants' instructions supplied with the Gizmo clearly indicate that defendants anticipated the users of their product would "hook," "slice" and "top" the ball. They expected their customers to commit the errors that normally plague beginning golfers. Thus, when they declared their product "completely safe," the only reasonable inference is that the Gizmo was a safe training device for all golfers regardless of ability and regardless of how squarely they hit the ball.

Although defendants claim they did not intend their statement to cover situations such as the one at bar, subjective intent is irrelevant. The question is not what a seller intended, but what the consumer reasonably believed. The rule "is one of strict liability for physical harm to the consumer, resulting from a misrepresentation of the character or quality of the chattel sold, even though the misrepresentation is an innocent one, and not made fraudulently or negligently." (Rest. 2d Torts, § 402B, com. a.)

██ We conclude that Fred Hauter reasonably believed he could use the Gizmo with safety and agree with the trial court that plaintiffs established all the elements of a cause of action for misrepresentation.

4. *Defendants breached their express warranty that the Golfing Gizmo ball was "completely safe" and would "not hit player," as well as their implied warranty of merchantability.*

██ As an alternative cause of action, plaintiffs claim that defendants breached both an express warranty and an implied warranty of merchantability.[8] In analyzing these claims, we confront for the first time the California Uniform Commercial Code provisions relating to

---

[8]The fact that Fred Hauter is not in privity with defendants does not bar recovery. Privity is not required for an action based upon an express warranty. (*Seely* v. *White Motor Co.* (1965) 63 Cal.2d 9, 14 [45 Cal.Rptr. 17, 403 P.2d 145].) Although privity appears to remain a requirement for actions based upon the implied warranty of merchantability (see *id.* at p. 29 [concurring opinion]; *Burr* v. *Sherwin Williams Co.* (1954) 42 Cal.2d 682, 695-696 [268 P.2d 1041]), Fred Hauter comes within' a well-recognized exception to the rule: he is a member of the purchaser's family. (Cf. *Peterson* v. *Lamb Rubber Co.* (1960) 54 Cal.2d 339, 347-348 [5 Cal.Rptr. 863, 353 P.2d 575]; Cal. Comments to U.C.C., § 2318 [not enacted in California] (West, 1964).)

warranties. (Cal. U. Com. Code, §§ 2313, 2314, and 2316.) The crucial issue here is not whether defendants created a warranty—as explained below, they clearly did. Rather, the bone of contention is whether they can escape liability by impliedly limiting the *scope* of their promise.

We first treat the claim for breach of express warranty, which is governed by California Commercial Code section 2313.[9] ▮▮▮▮ The key under this section is that the seller's statements—whether fact or opinion—must become "part of the basis of the bargain."[10] (See Cal. U. Com. Code, § 2313, com. 8; Ezer, *supra,* at p. 287, fn. 39.) The basis of the bargain requirement represents a significant change in the law of warranties. Whereas plaintiffs in the past have had to prove their reliance upon specific promises made by the seller (*Grinnell* v. *Charles Pfizer & Co.* (1969) 274 Cal.App.2d 424, 440 [79 Cal.Rptr. 369]), the Uniform Commercial Code requires no such proof. According to official comment 3 to the Uniform Commercial Code following section 2313, "no particular reliance . . . need be shown in order to weave [the seller's affirmations of fact] into the fabric of the agreement. Rather, any fact which is to take such affirmations, once made, out of the agreement requires clear affirmative proof."

The commentators have disagreed as to the impact of this new development. (See generally, Note, *"Basis of the Bargain"—What Role Reliance?* (1972) 34 U.Pitt.L.Rev. 145, 149-150.) Some have said that the basis of the bargain requirement merely shifts the burden of proving non-reliance to the seller. (See 1 Carroll, Cal. Commercial Law, *supra,* § 6.7, p. 210; Boyd, *Representing Consumers—The Uniform Commercial Code and Beyond* (1968) 9 Ariz.L.Rev. 372, 385.) Indeed, the comments to section 2313 seem to bear out this analysis; they declare that "all of the statements of the seller [become part of the basis of the bargain]

---

[9]Section 2313 provides: "(1) Express warranties by the seller are created as follows:

"(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

"(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description. . . ."

[10]As we explained above, defendants' statement is one of fact and is subject to construction as an express warranty. It is important to note, however, that even statements of opinion can become warranties under the code if they become part of the basis of the bargain. (Cal. U. Com. Code, § 2313, com. 8; Ezer, *supra,* at p. 287, fn. 39.) Thus the California Uniform Commercial Code expands sellers' liability beyond the former Uniform Sales Act (former Civ. Code, §§ 1732-1736) and provides greater coverage than Restatement Second of Torts, section 402B, discussed earlier.

*unless good reason is shown to the contrary."* (Cal. U. Com. Code, § 2313, com. 8 (italics added).)[11]

Other writers, however, find that the code eliminates the concept of reliance altogether. (See Note, *supra,* 34 U.Pitt.L.Rev. at p. 150; Nordstrom, Sales (1970) §§ 66-68.) Support can be found in the comments to the code for this view also; they declare that "[i]n view of the principle that the whole purpose of the law of warranty is to determine what it is that the seller *has in essence agreed to sell,* the policy is adopted of those cases which refuse except in unusual circumstances to recognize a material deletion of the seller's obligation. Thus, a contract is normally a contract for a sale of something describable and described." (Cal. U. Com. Code, § 2313, com. 4 (italics added).) To these observers, the focus of the warranty shifts from the buyer, who formerly had to rely upon specific statements in order to recover, to the seller, who now must stand behind his words if he has failed adequately to disclaim them. "[T]he seller must show by clear affirmative proof either that the statement was retracted by him before the deal was closed or that the parties understood that the goods would not conform to the affirmation or description. Under such an interpretation, the affirmation, once made, is a part of the agreement, and lack of reliance by the buyer is not a fact which would take the affirmation out of the agreement." (Note, *supra,* 34 U.Pitt.L.Rev. at p. 151.)[12]

We are not called upon in this case to resolve the reliance issue.[13] The parties do not discuss the changes wrought by the Uniform Commercial

---

[11]The code relegates "the metaphysical 'buyer's reliance' requirement to secondary status, where it properly belongs." (Ezer, *The Impact of the Uniform Commercial Code on the California Law of Sales Warranties* (1961) 8 U.C.L.A.L.Rev. 281, 285.) Ezer also notes: "The Code's implicit premise is that buyer's reliance is prima facie established from the fact that he made the purchase. If the seller can establish that the buyer in fact did not rely on the seller, that the affirmation or promise was not the 'basis of the bargain,' to use the Code language, then there is no express warranty." (*Id.* at p. 285, fn. 30.)

[12]Thus if a seller agrees to sell a certain quality of product, he cannot avoid liability for selling lower grade goods. No longer can he find solace in the fact that the injured consumer never saw his warranty. (See *Lonzrick* v. *Republic Steel Corp.* (1966) 6 Ohio St.2d 227, 237 [35 Ohio Ops.2d 404, 218 N.E.2d 185].)

[13]Although the code has been the law in California since 1965, we know of no California case which analyzes the basis of the bargain requirement. The scattered cases from other jurisdictions generally have ignored the significance of the new standard and have held that consumer reliance still is a vital ingredient for recovery based on express warranty. (See, e.g., *Stang* v. *Hertz Corp.* (1971) 83 N.M. 217, 219 [490 P.2d 475], revd. on other grounds, 83 N.M. 730 [497 P.2d 732, 52 A.L.R.3d 112]; *Gillette Dairy, Inc.* v. *Hydrotex Industries, Inc.* (8th Cir. 1971) 440 F.2d 969, 974; *Capital Equip. Enterprises, Inc.* v. *North Pier Term. Co.* (1969) 117 Ill.App.2d 264 [254 N.E.2d 542, 545]; *Speed Fastners, Inc.* v. *Newsom* (10th Cir. 1967) 382 F.2d 395, 397.)

Code, and plaintiffs are fully able to meet their burden regardless of which test we employ. ■ Fred Hauter's testimony shows that he read and relied upon defendants' representation; he was impressed by "something on the cover dealing with the safety of the item." More importantly, defendants presented no evidence which could remove their assurance of safety from the basis of the bargain. The trial court properly concluded, therefore, that defendants expressly warranted the safety of their product and are liable for Fred Hauter's injuries which resulted from a breach of that warranty.

■ The trial court also held for plaintiffs on the theory of breach of an implied warranty of merchantability.[14] ■ Unlike express warranties, which are basically contractual in nature (see Cal. U. Com. Code, § 2313, com. 1), the implied warranty of merchantability arises by operation of law. (*Holmes Packaging Mach. Corp.* v. *Bingham* (1967) 252 Cal.App.2d 862, 873 [60 Cal.Rptr. 769]; *Intrastate Credit Service, Inc.* v. *Pervo Paint Co.* (1965) 236 Cal.App.2d 547, 550 [46 Cal.Rptr. 182]; *Ritchie* v. *Anchor Casualty Co.* (1955) 135 Cal.App.2d 245, 255-256 [286 P.2d 1000]; 2 Witkin, Summary of Cal. Law (8th ed. 1973) § 63, p. 1138.) "Into every mercantile contract of sale the law inserts a warranty that the goods sold are merchantable, the assumption being that the parties themselves, had they thought of it, would specifically have so agreed." (Ezer, *supra*, at p. 292.) Consequently, defendants' liability for an implied warranty does not depend upon any specific conduct or promise on their part, but instead turns upon whether their product is merchantable under the code.

Merchantability has several meanings (see Cal. U. Com. Code, § 2314, subd. (2)(a-f)), two of which are relevant to the instant case: the product must "[c]onform to the promises or affirmations of fact made on the container or label" (Cal. U. Com. Code, § 2314, subd. (2)(f)), and must

---

[14]Section 2314 of the California Uniform Commercial Code provides as follows:

"(1) Unless excluded or modified (Section 2316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind . . .

"(2) Goods to be merchantable must be at least such as

"(a) Pass without objection in the trade under the contract description; and

"(b) In the case of fungible goods, are of fair average quality within the description; and

"(c) Are fit for the ordinary purposes for which such goods are used; and

"(d) Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

"(e) Are adequately contained, packaged, and labeled as the agreement may require; and

"(f) Conform to the promises or affirmations of fact made on the container or label if any . . . ."

be "fit for the ordinary purposes for which such goods are used." (Cal. U. Com. Code, § 2314 (2)(c).) ■ The Gizmo fails in both respects. As already explained, it does not live up to the statement on the carton that it is "COMPLETELY SAFE BALL WILL NOT HIT PLAYER." Furthermore, as explained below, the evidence shows that the Gizmo is not fit for the ordinary purposes for which such goods are normally used.

The Gizmo is designed and marketed for a particular class of golfers—"duffers"—who desire to improve their technique. Such players rarely hit the ball solidly. When they do, testified the golf pro, "It would be sort of a mistake, really." The safety expert classed the Gizmo as a major safety hazard. Furthermore, defendants *admit* that when a person using the Gizmo hits beneath the ball as Fred Hauter apparently did, he stands a substantial chance of seriously injuring himself. Defense counsel stated to the jury: "It is obvious if you miss the ball and you come along, you touch the cord, that you could possibly get [the ball] either in the head or some other part of your person, and there is no way in the world that I am going to be able to show that couldn't happen to any of us here. . . ."

Defendants nevertheless seek to avoid liability by limiting the scope of their warranties. They claim that the box containing the Gizmo and the instructions pertaining to its use clarified that the product was "completely safe" only when its user hit the ball properly. They point to no language expressing such a limitation but instead claim that a drawing in the instructions depicting a golfer "correctly" using their product *implies* the limitation.

As we explained above in discussing the false representation claim, defendants' argument is wholly without merit. Furthermore, they fail to meet the stern requirements of California Uniform Commercial Code section 2316[15] which governs disclaimer and modification of warranties. **(11)** Although section 2316 has drawn criticism for its vagueness,[16]

---

[15]Section 2316 provides that "(1) Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this division on parol or extrinsic evidence (Section 2202) negation or limitation is inoperative to the extent that such construction is unreasonable. . . .

". . . (3) [T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. . . ."

[16]See Moye, *Exclusion and Modification of Warranty Under the U.C.C.—How to Succeed in Business Without Being Liable for Not Really Trying* (1969) 46 Denver L.J.

its purpose is clear. No warranty, express or implied, can be modified or disclaimed unless a seller *clearly* limits his liability. (*Greenspun* v. *American Adhesives, Inc.* (E.D.Pa. 1970) 320 F.Supp. 442, 444; Franklin, *When Worlds Collide: Liability Theories and Disclaimers in Defective Product Cases* (1966) 18 Stan.L.Rev. 974, 993.) "This section is designed principally to deal with those frequent clauses in sales contracts which seek to exclude 'all warranties, express or implied.' It seeks to protect a buyer from unexpected and unbargained language of disclaimer by denying effect to such language when inconsistent with language of express warranty and permitting the exclusion of implied warranties only by conspicuous[17] language or other circumstances which protect the buyer from surprise."[18] (Cal. U. Com. Code, § 2316, com. 1.)

██ Because a disclaimer or modification is inconsistent with an express warranty, words of disclaimer or modification give way to words of warranty unless some clear agreement between the parties dictates the contrary relationship. (*Wilson Trading Corp.* v. *David Ferguson, Ltd.* (1968) 23 N.Y.2d 398, 405 [297 N.Y.S.2d 108, 244 N.E.2d 685]; *Berk* v. *Gordon Johnson Company* (E.D.Mich. 1964) 232 F.Supp. 682, 688.) ██ At the very least, section 2316 allows limitation of warranties only by means of *words* that clearly communicate that a particular risk falls on the buyer.[19]

██ Moreover, any disclaimer or modification must be strictly construed against the seller. (*Burr* v. *Sherwin Williams Co.* (1954) 42 Cal.2d 682, 694 [268 P.2d 1041]; see also, *Admiral Oasis Hotel Corp.* v. *Home Gas Indus., Inc.* (1966) 68 Ill.App.2d 297 [216 N.E.2d 282, 286].) Although the parties are free to write their own contract (*Delta Air Lines, Inc.* v. *Douglas Aircraft Co.* (1965) 238 Cal.App.2d 95, 100 [47 Cal.Rptr.

---

579, 580-581 and footnote 2; Ezer, *supra*, at page 311; 1 Carroll, *supra*, section 692, page 252; see generally, Cudahy, *Limitation of Warranty Under the Uniform Commercial Code* (1963) 47 Marq.L.Rev. 127, 131.

[17]"A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it." (Cal. U. Com. Code, § 1201, subd. (10).)

[18]As originally drafted in 1952, section 2316 stated bluntly in subdivision (1): "If the agreement creates an express warranty, *words disclaiming it are inoperative.*" (Italics added.) Although the section has been modified to read as presently written, "the spirit of the provision remains the same." (*Berk* v. *Gordon Johnson Company* (E.D.Mich. 1964) 232 F.Supp. 682, 688.)

[19]See *Dry Clime Lamp Corporation* v. *Edwards* (5th Cir. 1968) 389 F.2d 590, 594; *Boeing Airplane Company* v. *O'Malley* (8th Cir. 1964) 329 F.2d 585, 591; *Beech Aircraft Corp.* v. *Flexible Tubing Corp.* (D.Conn. 1967) 270 F.Supp. 548, 561; *Burr* v. *Sherwin Williams Co.* (1954) 42 Cal.2d 682, 693 [268 P.2d 1041].

518]), the consumer must be placed on fair notice of any disclaimer or modification of a warranty and must freely agree to the seller's terms. (*Dobias* v. *Western Farmers Association* (1971) 6 Wn.App. 194 [491 P.2d 1346, 1350].) "A unilateral nonwarranty cannot be tacked onto a contract containing a warranty." (*Klein* v. *Asgrow Seed Co.* (1966) 246 Cal.App.2d 87, 97 [54 Cal.Rptr. 609].)

In the instant case, defendants do not point to any language or conduct on their part negating their warranties. They refer only to a drawing on the box and to the notion that golf is a dangerous game; based on that meagre foundation, they attempt to limit their explicit promise of safety. Such a showing does not pass muster under the code, which requires clear language from anyone seeking to avoid warranty liability. We conclude, therefore, that the trial court properly granted plaintiffs judgment notwithstanding the verdict with regard to the warranty causes of action.

5. *Plaintiffs are entitled to recover as a matter of law on the cause of action based upon strict liability.*

Plaintiff's final cause of action is based upon the doctrine of strict liability. They claim that the Gizmo is defectively designed, a fact which, if proven, renders defendants strictly liable in tort for Fred's injuries.[20]

As our recent decisions indicate, to prevail on this theory plaintiffs need only prove that the product is defective, and need not show that the user was unaware of the defect. (*Luque* v. *McLean* (1972) 8 Cal.3d 136, 139 [104 Cal.Rptr. 443, 501 P.2d 1163].) As we stated in

[20]See, e.g., *Luque* v. *McLean* (1972) 8 Cal.3d 136 [104 Cal.Rptr. 443, 501 P.2d 1163] [lawn mower]; *Pike* v. *Frank G. Hough Co.* (1970) 2 Cal.3d 465 [85 Cal.Rptr. 629, 467 P.2d 229] [paydozer]; *Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049] [lathe]; *Culpepper* v. *Volkswagon of America, Inc.* (1973) 33 Cal.App.3d 510 [109 Cal.Rptr. 110] [automobile]; *Smith* v. *Dhy-Dynamic Co.* (1973) 31 Cal.App.3d 852 [107 Cal.Rptr. 907] [earth mover]; *Balido* v. *Improved Machinery, Inc.* (1972) 29 Cal.App.3d 633 [105 Cal.Rptr. 890] [plastic molding press]; *Bexiga* v. *Havir Mfg. Co.* (1972) 60 N.J. 402 [290 A.2d 281], *Rhoads* v. *Service Machine Company* (E.D.Ark. 1971) 329 F.Supp. 367 [punch presses]; *Rekab* v. *Frank Hrubetz & Co.* (1971) 261 Md. 141 [274 A.2d 107] [ferris wheel]; *Pizza Inn, Inc.* v. *Tiffany* (Tex. Civ. App. 1970) 454 S.W.2d 420 [dough rolling machine]; *Wright* v. *Massey Harris, Inc.* (1968) 68 Ill.App.2d 70 [215 N.E.2d 465] [cornpicker]; *Williams* v. *Brown Mfg. Co.* (1968) 93 Ill.App.2d 334 [236 N.E.2d 125] [trencher]; *Blake* v. *Orchards* (1968) 249 Ore. 348 [437 P.2d 757] [brush cutter]; *Schipper* v. *Levitt & Sons, Inc.* (1965) 44 N.J. 70 [207 A.2d 314] [hot water faucet]; *Ford Motor Co.* v. *Wagoner* (1946) 183 Tenn. 392 [192 S.W.2d 840, 852, 164 A.L.R. 364] [automobile].)

*Cronin* v. *J.B.E. Olson Corp.* (1972) 8 Cal.3d 121, 134 [104 Cal.Rptr. 433, 501 P.2d 1153]: "Although the seller should not be responsible for all injuries involving the use of its products, it should be liable for all injuries proximately caused by any of its products which are adjudged 'defective.' "

██ In the instant case the trial court ruled that the Gizmo was defectively designed as a matter of law, a conclusion which is firmly supported by the record. At trial, plaintiffs demonstrated how a person using the Gizmo under normal conditions is likely to injure himself by entangling his club in the cord attached to the ball, a significant danger not inherent in the game of golf. The evidence further shows that the risk of harm built into the Gizmo is greatest when the product is being used by its intended user, a player of limited ability. Defendants introduced no evidence whatsoever to rebut this showing. On this state of the record, the court properly found that the Gizmo was defectively designed as a matter of law, and that the defect was the proximate cause of the injuries in question.

6. *Conclusion.*

We affirm the order of the trial court granting judgment notwithstanding the verdict and remand the case to the trial court for the purpose of ascertaining damages.

Wright, C. J., McComb, J., Mosk, J., Sullivan, J., and Burke, J.,* concurred.

**CLARK, J.**—I concur with the majority that the record here establishes breach of express warranty as a matter of law—requiring affirmance of the judgment and disposing of this appeal. However, beyond this first issue, the majority's discussion is both unnecessary and unpersuasive.

---

*Retired Associate Justice of the Supreme Court Sitting under assignment by the Chairman of the Judicial Council.