Filed 9/6/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JAQUELYN YEH et al., <br><br>        Petitioners, <br> v. <br> THE SUPERIOR COURT OF CONTRA COSTA COUNTY, <br><br>        Respondent; <br> MERCEDES-BENZ USA, LLC, <br><br>        Real Party in Interest. | A166537 <br><br> (Contra Costa County Super. Ct. No. MSC22-00170) |

Petitioners Jaquelyn Yeh and David Chin seek a writ of mandate compelling the superior court to reverse its order compelling to arbitration their action under the Song-Beverly Consumer Warranty Act (the Act) against real party in interest Mercedes-Benz USA, LLC (MBUSA). They contend that the trial court improperly compelled arbitration because MBUSA is not a party to their agreements with the vehicle dealer and their claims against MBUSA are not intertwined with those agreements. We agree and shall direct the superior court to deny the motion to compel arbitration.

## Background

Petitioners, husband and wife, allege that in October 2017, they leased a Mercedes-Benz B250E from Mercedes-Benz of Walnut Creek (the dealer), and in May 2020 at the end of the lease, signed a Retail Installment Sales Contract (RISC) with the dealer to finance the purchase of the vehicle. Both

1

the lease and the RISC contained arbitration agreements.[1]

Petitioners allege that MBUSA, as the manufacturer or distributor of the vehicle, provided them with two express warranties and a separate implied warranty of merchantability, which warranties we set out below. Petitioners allege the vehicle had undisclosed defects covered by the warranties, including "defective windshield wipers, steering column, electrical issues, defective software, vehicle shuts off." They took the vehicle to the dealer, which was authorized by MBUSA for repairs, but despite multiple attempts, the vehicle could not be fixed.

Petitioners filed suit naming only MBUSA and Does as defendants and alleging claims solely under the Act.[2] Specifically, they assert causes of action for violation of the Act based on breach of an express warranty, "Failure To Commence Repairs Within A Reasonable Time And To Complete The[m] Within 30 Days in violation of Civil Code section 1793.2(b)" based upon the warranties, and "Breach of the Implied Warranty of Merchantability" based on Civil Code section 1794. They seek statutory repurchase, recission of the purchase agreement, damages, including incidental and consequential damages, pre-judgment interest, and attorneys' fees and costs.

MBUSA moved to compel arbitration arguing that (1) it had standing to compel arbitration as a third-party beneficiary of both the lease and the RISC, and (2) petitioners should be compelled to arbitration under the

---

[1] The parties do not distinguish between the two agreements, and, for purposes of this opinion, we also make no distinction.

[2] The Act, codified at Civil Code sections 1790 et seq., also known as the "lemon law," is a consumer protection statute created to encourage consumers to vindicate their rights when they have defective vehicles or other products. (*Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 992.)

2

doctrine of equitable estoppel.[3] MBUSA attached the agreements containing the arbitration provisions to its motion.

The arbitration provision in the lease agreement provides:

Important Arbitration Disclosures

The following arbitration provisions significantly affect your rights in any dispute with us. Please read the following disclosures and the arbitration provision that follows carefully before you sign the contract.

1. If either you or we choose, any dispute between you and us will be decided by arbitration and not in court. . . . [¶] . . . [¶] . . .

Any claim or dispute, whether in contract, tort or otherwise (including any dispute over the interpretation, scope, or validity of this lease, arbitration section or the arbitrability of any issue), between you and us or any of our employees, agents, successors or assigns, which arises out of or relates to a credit application, this lease, or any resulting transaction or relationship arising out of this lease shall, at the election of either you or us, or our successors or assigns, be resolved by a neutral, binding arbitration and not by a court action. . . .

The arbitration agreement in the RISC provides: "EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL." The agreement further provides:

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. . . .

---

[3] David Chin is not a signatory to the agreements, but he does not claim that he is not bound by the agreements.

Petitioners opposed the motion to compel arbitration. The trial court granted the motion. While the court rejected MBUSA's argument that it was a third-party beneficiary of the agreements, it agreed with MBUSA's equitable estoppel argument, relying on what was then the only California appellate opinion on the issue, *Felisilda v. FCA US LLC* (2020) 53 Cal.App.5th 486 (*Felisilda*).

Petitioners filed a petition for writ of mandate with our court challenging the order compelling arbitration. We solicited preliminary briefing and then issued an order to show cause.

## Discussion

Petitioners challenge the trial court's ruling that they are equitably estopped from refusing to arbitrate their claims against MBUSA. MBUSA asserts the equitable estoppel doctrine applies because the warranties upon which petitioners sue are an integral part of petitioners' contracts with the dealer that contain the agreements to arbitrate.[4]

We review the trial court's decision to compel arbitration de novo because it presents a question of law based upon undisputed facts. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle Museum*); *Ford Motor Warranty Cases* (2023) 89 Cal.App.5th 1324, review granted July 19, 2023, No. S279969 (*Ford Warranty*).) As the party seeking to compel arbitration, MBUSA has the burden to prove it "is a *party* to the arbitration agreement covering the

---

[4] While MBUSA states that petitioners allege an agency relationship in paragraph 12 of the complaint, and references the third-party beneficiary exception, it does not discuss, much less explain with analysis and citation to authority, why the agency or third-party beneficiary exceptions would apply in this case. Accordingly, we deem any argument regarding agency and third-party beneficiaries waived.

4

dispute." (*Jones v. Jacobson* (2011) 195 Cal.App.4th 1, 15, citing Code Civ. Proc., § 1281.2.)

Below, the parties disagreed about which law governed the arbitration agreements, with petitioners arguing that California law applies and MBUSA arguing that the Federal Arbitration Act (FAA) applies. [5] The parties have not addressed the issue here, and we have no need to resolve it because even if the FAA applies, "[s]tate law determines whether a non-signatory to an agreement containing an arbitration clause may compel arbitration." (*Ngo v. BMW of North America, LLC* (9th Cir. 2022) 23 F.4th 942, 946 (*Ngo*); *Ford Warranty*, *supra*, 89 Cal.App.5th at p. 1332 ["Under certain circumstances, a nonsignatory to an arbitration agreement may seek to enforce it against a signatory. Whether such enforcement is permissible is a question of state law."].)

Under the doctrine of equitable estoppel, "applied in 'both federal and California decisional authority, a nonsignatory defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action against the nonsignatory are "intimately founded in and intertwined" with the underlying contract obligations.' " (*JSM Tuscany v. Superior Court* (2011) 193 Cal.App.4th 1222, 1237 (*JSM Tuscany*).) " 'By relying on contract terms in a claim against a nonsignatory defendant, even if not exclusively, a plaintiff may be equitably estopped from repudiating the arbitration clause contained in that agreement.' [Citations.] 'The rule applies to prevent parties from trifling with their contractual obligations.' " (*Ibid.*, footnote omitted.)

Until recently, there were no California appellate cases deciding whether a nonsignatory vehicle manufacturer could compel arbitration based

---

[5] The arbitration agreement provides that the FAA applies.

upon the equitable estoppel theory. The first California appellate decision to address the issue was *Felisilda, supra,* 53 Cal.App.5th 486, where the Third Appellate District held the vehicle owner was equitably estopped from refusing to arbitrate with the nonsignatory manufacturer. (*Id.* at p. 497.) The manufacturer relied on an arbitration provision in a sales contract between the owner and dealer that is identical to the arbitration provision in the agreements here. The *Felisilda* court explained: "Based on language in the sales contract and the nature of the Felisildas' claim against FCA [the defendant], we conclude the trial court correctly ordered that the entire matter be submitted to arbitration. In signing the sales contract, the Felisildas agreed that '[a]ny claim or dispute, whether in contract, tort, statute or otherwise . . . between you and us . . . *which arises out of or relates to . . . [the] condition of this vehicle* . . . shall . . . be resolved by neutral, binding arbitration and not by a court action.' Here, the Felisildas' claim against FCA relates directly to the condition of the vehicle." (*Id.* at p. 496.) Based upon the allegations of the complaint that " 'express warranties accompanied the sale of the vehicle to [them] by which FCA . . . undertook to preserve or maintain the utility or performance of [their] vehicle or provide compensation if there was a failure in such utility or performance,' " the court concluded "the sales contract was the source of the warranties at the heart of this case." (*Ibid.*)

Earlier this year, after we issued an order to show cause in this case, the Division Eight of the Second Appellate District decided *Ford Warranty, supra,* 89 Cal.App.5th 1324, where the court reached the opposite conclusion from *Felisilda* and affirmed the trial court's denial of the petition to compel arbitration in a coordinated action with multiple plaintiffs whose arbitration agreements with defendant Ford Motor Company (FMC) were similar. (*Id.* at

6

pp. 1329, 1335.) The court rejected defendants' arguments that equitable estoppel, third party beneficiary, or agency applied. (*Id*. at pp. 1329, 1332–1343.) Relevant here, the court held: "Equitable estoppel does not apply because, contrary to FMC's arguments, plaintiffs' claims against it in no way rely on the agreements." (*Id*. at p. 1329.)

The *Ford Warranty* court declined to follow *Felisilda*, disagreeing with *Felisilda*'s interpretation that the sales contract was the source of the warranties and broadly called for arbitration of claims against third-party nonsignatories. (*Ford Warranty*, *supra*, 89 Cal.App.5th at p. 1334.) It rejected the manufacturer's argument that "plaintiffs' claims are 'intimately founded in and intertwined with the underlying obligations of the sale[ ] contracts' because the sale contracts between plaintiffs and the dealers gave plaintiffs certain contractual rights they now sue on—warranty claims against the manufacturer." (*Id*. at pp. 1333–1334.) Instead, the court held that the buyer's claims were not founded in the sales contracts because the sales contracts included no warranties, and disagreed with the manufacturer that California law treats "manufacturer warranties imposed outside the four corners of a retail sales contract as part of the sales contract." (*Ford Warranty*, *supra*, 89 Cal.App.5th at pp. 1335–1336 citing *Greenman v. Yuba Power Products, Inc.* (1963) 59 Cal.2d 57; 60 (*Greenman*) & *Corporation of Presiding Bishop of Church of Jesus Christ of Latter Day Saints v. Cavanaugh* (1963) 217 Cal.App.2d 492, 514 (*Cavanaugh*).)

After this case was fully briefed, Division Seven of the Second Appellate District decided *Montemayor v. Ford Motor Co.* (2023) 92 Cal.App.5th 959 (*Montemayor*). Like their colleagues in *Ford Warranty*, the court in *Montemayor* declined to follow *Felisilda* and affirmed the trial court's order denying arbitration. (*Id*. at pp. 968, 975.) The court explained that "the

Montemayors allege as part of each cause of action against Ford [the manufacturer] at issue on appeal that Ford's obligations arose out of its express written warranty, not the sales contract." (*Id.* at p. 970.) "[T]he fact the Montemayors purchased the defective vehicle from [the dealer] pursuant to the sales contract, and as a result of their purchase they received separate express warranties from Ford, does not mean their causes of action against Ford based on those express warranties are founded in the sales contract." (*Id.* at p. 971.) Similarly, the Third Appellate District, the same district that decided *Felisilda*, joined *Ford Warranty* and *Montemayor* in disagreeing with *Felisilda* that the sales contract was the source of the warranties, and the court concluded that equitable estoppel did not apply to compel arbitration. (*Kielar v. Superior Court* (Aug. 16, 2023, C096773) __ Cal.App.5th___ (*Kielar*).)

Petitioners argue that we should follow *Ford Warranty*, *Montemayor*, and *Kielar*, while MBUSA contends that we should follow *Felisilda*.[6] As we explain, we agree with the conclusions reached by *Ford Warranty*, *Montemayor*, and *Kielar* and hold that MBUSA cannot compel arbitration with petitioners.

We analyze the equitable estoppel issue as it applies to this case based upon the facts of the operative complaint. (*Ford Warranty*, *supra*, 89 Cal.App.5th at p. 1333; *Felisilda*, *supra*, 53 Cal.App.5th at pp. 495–496.) We must decide whether the causes of action are " 'intimately founded in and

---

[6] Petitioners also urge us to follow the Ninth Circuit case of *Ngo*, *supra*, 23 F.4th 942. We find it unnecessary to analyze *Ngo*, which has only persuasive value, because *Ford Warranty*, *Montemayor,* and *Kielar* cite the same California cases to support their conclusions that equitable estoppel does not apply, and the federal cases *Ngo* cites are not relevant to this analysis. (*Ford Warranty*, *supra*, 89 Cal.App.5th at pp. 1335–1336, *Ngo*, *supra*, 23 F.4th 942, 949–950.)

intertwined' with the underlying contract obligations." (*JSM Tuscany*, *supra*, 193 Cal.App.4th at p. 1237.)

*Goldman v. KPMG, LLP* (2009) 173 Cal.App.4th 209 is instructive in how we determine if the allegations in the complaint are intimately founded in and intertwined with the underlying contract obligations. In *Goldman*, plaintiffs sued accountants and lawyers—with whom they did not have arbitration agreements—arising out of a fraudulent tax shelter scheme based on claims that that these defendants aided and abetted the fraudulent scheme. (*Id.* at pp. 213, 216.) The operating agreements of the limited liability companies (set up by the investment advisors to facilitate the investments) contained an arbitration clause. (*Id.* at p. 217.) The nonsignatory defendants moved to compel arbitration arguing that the plaintiffs' claims presupposed the existence of the operating agreements as the vehicle in which the fraudulent tax scheme was carried out and, therefore, plaintiffs were equitably estopped from refusing to arbitrate pursuant to the arbitration clause in the operating agreements. (*Id.* at p. 218.) The court disagreed and affirmed the denial of the motion compelling arbitration. The court noted that the complaints did not "rely on or use any terms or obligations of the operating agreements as a foundation for their claims." (*Ibid.*) The court explained that the inequity the doctrine seeks to address arises when a plaintiff relies on the substantive terms of the agreement to assert a claim against a nonsignatory defendant, and at the same time seeks to disavow the arbitration clauses of those very agreements. (*Id.* at p. 221.) The operating agreements "were merely incidental to the scheme" and "none of the terms in those agreements are alleged to have been violated or otherwise to form any part of the [plaintiffs'] complaints," and therefore no inequity would result in denying arbitration. (*Id.* at p. 233.) The

court concluded that despite broader language that could be "cherry-pick[ed]," the "underlying principle, stated in *all* the cases" was "actual reliance on the terms of the agreement to impose liability on the nonsignatory." (*Id.* at p. 231.)

In this case, petitioners allege that MBUSA, as the manufacturer or distributor of the vehicle, provided them with two express warranties and a separate implied warranty of merchantability. Specifically, the complaint describes these warranties as follows: "Defendant MBUSA manufactured or distributed the Vehicle. MBUSA provided a 4 year/50,000 mi[le] basic warranty and, a 4 year/50,000 mile powertrain warranty." "MBUSA also provided plaintiffs with a separate implied warranty of merchantability. . . . [¶] . . . [¶] . . . MBUSA's express and implied warranties accompanied the sale of the Vehicle to Plaintiffs. Manufacturer expressly warranted that the Vehicle was a fully inspected, certified without defects in compliance with all certification standards." "In connection with the purchase, Plaintiffs received an express written warranty in which Defendants undertook to preserve or maintain the utility or performance of the Vehicle or to provide compensation if there is a failure in utility or performance for a specified period of time. The warranty provided, in relevant part, that in the event a defect developed with the Vehicle during the warranty period, Plaintiffs could deliver the Vehicle for repair services to Defendant or Defendant's representative and the Vehicle would be repaired."

Like the complaint in *Goldman*, petitioners' complaint does not reference either of the two agreements with the dealer and does not allege that MBUSA breached obligations based on those agreements. MBUSA is not mentioned in the agreements and does not have any obligations arising out of the agreements. Petitioners' claims are thus not "intimately founded and

10

intertwined" with the agreements (*JSM Tuscany, supra,* 193 Cal.App.4th at p. 1237), but instead arise from a statutory scheme separate and apart from the contracts.

MBUSA disagrees with this analysis. It argues that "Under the California Uniform Commercial Code both express and implied warranties are part of the contractual bargain and are considered to be supplemental terms to a sales contract."

We disagree. "California law does not treat manufacturer warranties imposed outside the four corners of a retail sale contract as part of the sale contract."[7] (*Ford Warranty, supra,* 89 Cal.App.5th at pp. 1335–1336 citing *Greenman, supra,* 59 Cal.2d at pp. 60–61; see also *Cavanaugh, supra,* 217 Cal.App.2d at p. 514 ["[T]he express warranty herein involved was not part of a contract of sale between the manufacturer and the plaintiff."]; *Burr v. Sherwin Williams Co.* (1954) 42 Cal.2d 682, 696 [discussing exception to general rule requiring privity when manufacturer makes representations in labels or advertising and citing cases]; 4 Witkin, Summary of Cal. Law (11th ed. 2023) Sales, § 100 [citing cases].)[8]

---

[7] Express independent warranties can be created, for example, when a consumer relies on a manufacturer's labels or advertising materials even if there is not privity of contract. (*Fundin v. Chicago Pneumatic Tool Co.* (1984) 152 Cal.App.3d 951, 957.)

[8] As noted by a law review article published prior to the adoption of the Uniform Commercial Code in California, the Uniform Commercial Code does not attempt to resolve problems of "diagonal privity," e.g., between consumer and manufacturer. (Ezer, *The Impact of the Uniform Commercial Code on the California Law of Sales Warranties* (1961) 8 U.C.L.A. L. Rev. 281, 324–325 & fn. 267; see Franklin, *When Worlds Collide: Liability Theories and Disclaimers In Defective-Product Cases* (1996) 18 Stan. L. Rev. 974, 1016 ["The Code has avoided most of the controversial questions of extending warranties in the absence of privity and has left this to state law."].)

In *Greenman*, the plaintiff sued the retailer and manufacturer of a power drill that injured him. He failed to provide notice to the defendants until ten-and-one-half months after his injury. (*Greenman, supra,* 59 Cal.2d at p. 59.) At trial, the jury found the retailer was not liable but the manufacturer was liable for negligence and breach of express warranties (the warranties were based on statements in the manufacturer's brochures). (*Id.* at p. 60.) On appeal, the manufacturer argued that the plaintiff's action was barred because he failed to provide reasonable notice pursuant to then existing Civil Code section 1769, a provision of the former Uniform Sales Act providing that, absent an agreement to the contrary, a buyer who accepts goods does not discharge the seller from liability if the buyer provides notice within a reasonable time of the breach. (*Id.* at pp. 60–61.) The Supreme Court held that the statute, which dealt with "the rights of the parties to a contract of sale or a sale . . . does not provide that notice must be given of the breach of a warranty that arises independently of a contract of sale between the parties. Such warranties are not imposed by the sales act but are the product of common-law decisions that have recognized them in a variety of situations." (*Id.* at p. 61.) The court continued: "It is true that in many of these situations the court has invoked the sales act definitions of warranties [citations] in defining the defendant's liability, but it has done so, not because the statutes so required, but because they provided appropriate standards for the court to adopt under the circumstances presented." (*Id.* at pp. 60–61.)

The court in *Cavanaugh, supra*, 217 Cal.App.2d 492, answering the question of whether notice under the Uniform Sales Act had to be provided to a manufacturer sued for a defective product, reached the same conclusion as *Greenman* that the express warranty was not part of the contract of sale between the manufacture and plaintiff. (*Id.* at p. 514.) Similarly, the court in

12

*Gherna v. Ford Motor Co.* (1966) 246 Cal.App.2d 639, also applying the Uniform Sales Act and *Greenman*, held that the warranty that usually comes through the dealer to the buyer is applicable to both the manufacturer and dealer, and also that advertisements by the manufacturer that constitute warranties are independent of the contract. (*Id.* at pp. 652–653.)

MBUSA, like FMC in *Ford Warranty*, *supra*, 89 Cal.App.5th at pages 1335–1336, criticizes reliance on *Greenman* and *Cavanaugh* on the basis that they were decided under the Uniform Sales Act, the predecessor to the California Uniform Commercial Code. Contrary to MBUSA's argument, the enactment of the California Uniform Commercial Code did not change existing law that manufacturer warranties can exist separate from a sales contract. The California Uniform Commercial Code Comment to the Section 2313 states:  "Although this section is limited in its scope and direct purpose to warranties made by the seller to the buyer as part of a contract for sale, *the warranty sections of this Article are not designed in any way to disturb those lines of case law growth which have recognized that warranties need not be confined either to sales contracts* or to the direct parties to such a contract. They may arise in other appropriate circumstances such as in the case of bailments for hire, whether such bailment is itself the main contract or is merely a supplying of containers under a contract for the sale of their contents. The provisions of Section 2-318 on third party beneficiaries expressly recognize this case law development within one particular area. Beyond that, *the matter is left to the case law with the intention that the policies of this Act may offer useful guidance in dealing with further cases as they arise.*" (Cal. U. Com. Code, com. 2 to § 2213, italics added.)

In addition, the Supreme Court in *Hauter v. Zogarts* (1975) 14 Cal.3d 104 (*Hauter*) explained that the California Uniform Commercial Code

13

expands rather than limits liability under the Uniform Sales Act. (*Id.* at p. 115, fn. 10 ["Thus the California Uniform Commercial Code expands sellers' liability beyond the former Uniform Sales Act (former Civ. Code, §§ 1732–1736) . . . ."]; *Klein v. Asgrow Seed Co.* (1966) 246 Cal.App.2d 87, 102–103 ["As we view it, however, the Commercial Code does not curtail, in any respect we have noted, liability imposed by its predecessor (the Uniform Sales Act) upon sellers for breaches of warranty nor extend their power to disclaim or limit liability for such breaches."].) Further, both *Greenman* and *Cavanaugh* rely on sections of the Uniform Sales Act that have been adopted by the California Uniform Commercial Code. (*Greenman, supra,* 59 Cal.2d at pp. 60–62 citing Civil Code §§ 1732, 1735; *Cavanaugh, supra,* 217 Cal.App.2d at pp. 504, 509, 514 citing Civil Code §§ 1732–1735, 1721–1800.)[9] Thus, MBUSA's argument that *Greenman* and *Cavanaugh* are "not on point" is incorrect.

We disagree with MBUSA that *Hauter, supra,* 14 Cal.3d 104 supports its position. MBUSA relies on language from *Hauter* that " '[t]he basis of the bargain requirement represents a significant change in the law of warranties.' " (*Id.* at p. 115.) This language, however, pertains to the issue of whether a buyer needs to rely on the seller's affirmation, not whether manufacturer warranties are incorporated into a separate contract. (*Ibid.* ["Whereas plaintiffs in the past have had to prove their reliance upon specific promises made by the seller [citation], the Uniform Commercial Code requires no such proof."].)

---

[9] The comparable section from current section 2313 to the Uniform Sales Act are former Civil Code sections 1732, 1734, 1736. (Cal. U. Com. Code, § Disp Table.) The comparable section from current section 2314 was former Civil Code section 1735. (*Ibid.*)

*Hauter* is also distinguishable on its facts. In *Hauter*, the plaintiff who was injured by a training device for unskilled golfers sued the seller and manufacturer. (*Hauter, supra*, 14 Cal.3d at p. 108, fn. 1.) The container stated: "Completely Safe Ball Will Not Hit Player," which the Supreme Court held was an express warranty by the manufacturer and seller. (*Id.* at pp. 109, 114–115.) The distinguishing feature of *Hauter* from the facts of this case is that in *Hauter*, the seller and manufacturer provided the same warranty. (See *id.* at pp. 108–109, 114, 118.) The court had no need to address the established law that applies when a manufacturer provides an independent warranty, the situation presented here. *Hauter* in no way changed the holding of *Greenman, supra*, 59 Cal.2d 57 or the cases preceding it. We also find *A. A. Baxter Corp. v. Colt Industries, Inc.* (1970) 10 Cal.App.3d 144, 153, relied upon by MBUSA, distinguishable because similar to *Hauter*, there was only one warranty provided collectively by the maker, lessor, and a third defendant. (*Id.* at p. 148.)

We are not persuaded by MBUSA's assertion that the Act "makes express warranties an integral part of the sales contract." The purpose of the Act is to provide greater consumer protection than previously existed (*Mexia v. Rinker Boat Co., Inc.* (2009) 174 Cal.App.4th 1297, 1303–1304), and its remedies are cumulative. (Civ. Code, § 1790.4; see also *id.*, § 1790.3 ["The provisions of this chapter shall not affect the rights and obligations of parties determined by reference to the Commercial Code except that, where the provisions of the Commercial Code conflict with the rights guaranteed to buyers of consumer goods under the provisions of this chapter, the provisions of this chapter shall prevail."].) The Act defines an "express warranty" as "a written statement arising out of a sale to the consumer of a consumer good pursuant to which the manufacturer, distributor, or retailer undertakes to

preserve or maintain the utility or performance of the consumer good or provide compensation if there is a failure in utility or performance." (Civ. Code, § 1791.2, subd. (a)(1).) Based upon a plain reading of the language of the statute, an express warranty arises out of a sale rather than the underlying contracts.

We are also unpersuaded by MBUSA's citation to *Gavaldon v. DaimlerChrysler Corp.* (2004) 32 Cal.4th 1246 for the proposition that the Legislature, in enacting the Act, intended for an express warranty to become part of a purchase agreement. The Supreme Court in *Gavaldon* considered whether a service agreement was part of an express warranty, concluding that the two were different: "[T]he Legislature apparently conceived of an express warranty as being part of the purchase of a consumer product, and a representation of the fitness of that product that has particular meaning for consumers. In contrast, it apparently thought of the purchase of a service contract as distinct from the purchase of the product, and not as a representation of fitness but only an agreement to provide repair services, a kind of insurance. Hence, one difference between express warranties and service contracts is that the latter is generally purchased 'for an additional cost.' " (*Id.* at p. 1258.) Nothing in the court's holding suggests that the manufacturer's express warranty is part of the sales contract.

In this case, although the parties do not provide MBUSA's express warranties, it is undisputed that they are separate from the lease agreement and RISC because the language of the express warranties, as described by the complaint, is not part of the lease agreement or RISC. Moreover, the dealer in the RISC expressly disclaims any warranties, which provides further evidence that the warranties are independent: "The Seller makes no warranties, expressed or implied on the vehicle . . . .[¶] This provision does

16

not affect any warranties covering the vehicle that the vehicle manufacturer may provide." Accordingly, MBUSA's warranties are not part of the sales contract. (*Ford Warranty*, *supra*, 89 Cal.App.5th at pp. 1335–1336; *Montemayor*, *supra*, 92 Cal.App.5th at pp. 970–971, *Kielar*, *supra*, at p. 3)

We also reject MBUSA's reliance on the portion of the arbitration provision in the RISC stating it applies to any claim "between you and us . . . which arises out of or relates to . . . [the] condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract)." We agree with *Ford Warranty* that this language does not show "consent by the purchaser to arbitrate claims with third party nonsignatories. Rather, we read it as a further delineation of the *subject matter* of claims the purchasers and dealers agreed to arbitrate. They agreed to arbitrate disputes 'between' themselves— ' "you and us——arising out of or relating to 'relationship[s],' including ' "relationship[s] with third parties who [did] not sign th[e] [sale] contract[s]," ' resulting from the ' "purchase, or condition of th[e] vehicle, [or] th[e] [sale] contract." ' " (*Ford Warranty*, *supra*, 89 Cal.App.5th at pp. 1334– 1335.) Like the claims of plaintiffs in *Ford Warranty*, petitioners' claims are not founded on the agreements because, as discussed, they did not allege violations of the lease agreement or RISC or sue on any warranties in the agreements, but instead seek to recover based upon MBUSA's statutory obligations. (*Id*. at p. 1335.)

MBUSA does not provide any separate analysis for the breach of implied warranty claim. Thus, we apply the same analysis to petitioners' claims for breach of implied warranty as applied to their express warranty claim. Petitioners allege in their third cause of action that: "41. Pursuant to Civil Code sections 1792 and 1791.1, the sale of the Vehicle was accompanied

17

by Defendants' implied warranty of merchantability. The duration of the implied warranty is coextensive in duration with the duration of the express written warranty provided by Defendant. [¶] 42. The implied warranty of merchantability means and includes that the Vehicle will comply with each of the following requirements: (1) The Vehicle will pass without objection in the trade under the contract description; (2) The Vehicle is fit for the ordinary purposes for which such goods are used; (3) The Vehicle is adequately contained, packaged and labeled; and (4) The Vehicle will conform to the promises or affirmations of fact made on the container or label." Like the express warranty claim, the complaint does not reference either of the two agreements with the dealer and does not allege that MBUSA breached obligations based on the agreements with the dealer, but instead the claim is based upon an independent statutory scheme. Accordingly, petitioner's implied warranty claim is not " 'intimately founded and intertwined' " with the dealer agreements such that petitioners are equitably estopped from refusing to arbitrate with MBUSA. (*JSM Tuscany*, *supra*, 193 Cal.App.4th at p. 1237.)

## Disposition

Let a peremptory writ of mandate be issued directing the respondent superior court to vacate its August 12, 2022 order compelling arbitration and enter a new and different order denying the motion to compel arbitration. Petitioners shall recover their costs in this proceeding. (Cal. Rules of Court, rule 8.493(a).)

18

_____

Fineman, J.*

WE CONCUR:


_____

Brown, P. J.


_____

Goldman, J.


---

* Judge of the Superior Court of California, County of San Mateo, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

### _Yeh v. SuperiorCourt_

(A166537)


Trial Court:  Contra Costa County


Trial Judge: Hon. Barry Baskin


Attorneys:

Rosner, Barry & Babbitt, Christopher P. Barry, Arlyn L. Escalante; Auto Fraud Legal Center, Michelle A. Cook for Plaintiff and Petitioner.


Nixon Peabody, Jennifer A. Kuenster, Leon V. Roubinian; Law Office of David Tennant and David H. Tennant, Kathy L. Eldrige for Defendants and Real Party in Interest.


Theta Law Firm, Soheyl Tahsildoost, Ali Ameripour for Real Party in Interest.